655 So.2d 126 (1995)
Jeanie MELBOURNE, Appellant,
v.
STATE of Florida, Appellee.
No. 93-1092.
District Court of Appeal of Florida, Fifth District.
April 21, 1995.
Rehearing Denied June 1, 1995.
*127 Terrence E. Kehoe, of Law Offices of Terrence E. Kehoe, Orlando, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Barbara Arlene Fink, Asst. Atty. Gen., Dayton Beach, for appellee.
PER CURIAM.
Jeanie Melbourne was driving under the influence when she turned in front of an oncoming vehicle, killing two people and seriously injuring another. She was convicted of two counts of DUI manslaughter and one count of DUI with serious bodily injury. Although we affirm, appellant has raised three issues that deserve discussion.[1]
Appellant contends that the court violated the rule of Neil[2] by not conducting a proper inquiry after she objected to the state's peremptory challenge of a black juror. This is the sum total of the record inquiry concerning this matter:
MR. MASON [Trial Defense Attorney]: Does anyone have alcoholism in their family or any friends who are alcoholics, or anything along those lines?
MR. WELLS: My wife. She died of alcohol.
MR. MASON: What do you do for W.E.S.H.T.V.?
MR. WELLS: I work in programming. Whatever you see is whatever I do.
MR. MASON: Do you work nights or do you work days?
MR. WELLS: I work days.
MR. MASON: Would you like to serve again?
MR. WELLS: I will do what I have to do.
* * * * * *
MR. BRESSLER [Prosecutor]: We'd also like to strike number 19, your honor.
MR. MASON: Mr. Dewey Wells, the black man. I would raise a Baxter Johans Challenge ... Johans. He's a black man. Number 19.
MS. MUNYON: The state has not stricken any black jurors at all. The defense has stricken juror number ten, Tillman, as well as juror number 13, which are black. The state accepted both of these jurors.
MR. BRESSLER: Kevin McCall was a black juror that the defense struck.
MR. MASON: I have nothing else to say.
THE COURT: Well, I don't see anything in this record to indicate that there's any  that the state in exercising this challenge to a black person is in any way acting in a discriminatory fashion, or singling out Mr. Wells because of his race in its exercise of peremptory challenge.
Appellant urges that the process used by the court in upholding the challenge to Mr. Wells violated the bright-line rule set out in State v. Johans, 613 So.2d 1319, 1322 (Fla. 1993):
Under our decision today, the presumption of validity of peremptory strikes established in Neil is still the law in Florida. Furthermore, a peremptory strike will be deemed valid unless an objection is made that the challenge is being used in a racially discriminatory manner. However, upon such objections, the trial judge must conduct a Neil inquiry... . Thus, we hold that the proper remedy in all cases where the trial court errs in failing to hold a Neil inquiry is to reverse and remand for a new trial.
*128 In Johans, no Neil inquiry was conducted because the trial judge ruled that the defense had failed to establish the Neil threshold to require the inquiry. The supreme court in Johans eliminated the threshold burden previously carried by the one challenging the strike. Here, however, the court did conduct a Neil inquiry. It is true that the prosecutor anticipated the question by the judge and, without the judge actually asking the question, proceeded into the state's explanation that its peremptory strike was not racially motivated. While somewhat free-form, inquiry was nevertheless conducted, as evidenced by the court's ruling.
Although not raised below, appellant now contends that the reason offered by the prosecution was insufficient to meet its burden of showing a non-racial reason for the challenge. Appellant points out that the state's response merely asserts its non-racial motivation and does not go forward with a race-neutral reason for the strike. Nevertheless, because the trial court can consider all that it has seen and heard, in addition to the explanation that comes directly from the mouth of the lawyer who has announced the peremptory challenge, reversal is not required. The record, as brief as it is in relation to the Wells strike, clearly shows the non-racial motivation. This is a case in which a woman, allegedly driving under the influence, caused the death of two persons and seriously injured another. Mr. Wells informed the court that his wife had died as a result of alcoholism. This revelation was not pursued by either attorney. It is possible, of course, that Mr. Wells might have been unaffected by his previous misfortune. It is more likely, however, that he would either have been sympathetic to appellant because of her weakness or hostile to her because of her conduct. In the event of either sympathy or hostility, a race-neutral reason for this strike was apparent on the record. Moreover, though not alone dispositive, the jury selection proceedings to that point demonstrated that the state's challenge was not a ploy to prevent African Americans from serving on the jury.
Appellant's second issue also involves jury selection. The defense raised challenges to two jurors[3] for cause which were rejected. The court erred in not striking Mr. Csandli for cause because his responses clearly showed that Mr. Csandli's personal experiences might affect his ability to be impartial. The court did not err, however, in failing to excuse Mr. Jilani for cause. Mr. Jilani responded to a defense inquiry concerning driving and drinking as follows:
MR. JILANI: The [law] says don't drink and drive, no drinking.
* * * * * *
MR. MASON: If you drink alcohol, or whatever your tolerance is, I have no idea, but if you drink alcohol and get in your car and drive, there's no crime that's ever been committed.
If you drink alcohol and you get in your car and you drive and you are impaired, that's the crime. You agree with the law or disagree with the law, Mr. Jilano [sic]?
MR. JILANI: It's a crime.
MR. MASON: It's a crime?
MR. JILANI: Uh-huh.
The difficulty with a compound question is that it often draws a confused answer. The final part of the question asked indicated that it was a crime to drive while impaired. He then asked if Mr. Jilani agreed. Mr. Jilani agreed that such would be a crime. He did not directly respond to Mr. Mason's first statement that driving after drinking, so long as there is no impairment, would be legal. Mr. Jilani never indicated that he could not or would not follow the law as instructed by the judge. The competency of a juror challenged for cause presents a mixed question of law and fact to be determined by the trial court. Manifest error must be shown to overturn the trial court's finding. Mills v. State, 462 So.2d 1075 (Fla.), cert. denied, 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985). The defense has simply failed to meet this standard. Since the trial court awarded the defense one additional peremptory challenge, the court's ruling on Mr. Csandli was harmless error.
*129 Finally, we reject appellant's argument that appellant could not be convicted for each of the two homicides and the DUI with serious injuries under section 316.193, Florida Statutes (1991). Appellant's reliance on Boutwell v. State, 631 So.2d 1094 (Fla. 1994) is misplaced. There the court had under consideration whether injury to several persons in one accident where the offender was driving with a suspended license would support multiple convictions for the offense of driving while license suspended causing serious injury. The court answered the question in the negative, reasoning that the offense was driving with a suspended license with the penalty enhanced by the fact of injury; and that the number of persons injured was fortuitous. Id. at 1095.
It is important to note that the case approved by the Boutwell court was Wright v. State, 592 So.2d 1123 (Fla. 3d DCA 1991), quashed on other grounds, 600 So.2d 457 (Fla. 1992). The Wright court had expressly upheld four convictions for DUI causing serious injury while reversing the four convictions for driving with a suspended license causing serious injury. The Wright court explained simply that driving with a suspended license was a single offense whereas the injuries to four persons warranted the multiple DUI with injuries convictions. Although this analysis isn't very instructive, the Wright court reached a common-sense result. Unfortunately, as the dissent of Judge Harris shows, given the similarity in the structure of the two statutes, the supreme court, in explaining its reasoning in Boutwell, has placed the existing law construing the DUI statute in some doubt. If "injury" in one of two similarly constructed statutes is merely a penalty enhancement to the underlying offense, the logical conclusion to reach is that the other statute should be treated the same. This would mean that death or injury merely enhances the penalty for the single DUI offense. The fact is, however, that these two offenses have never been treated the same, as Wright vividly demonstrates.[4]
In our view, this issue was decided by the Florida Supreme Court in Houser v. State, 474 So.2d 1193 (Fla. 1985), where the court had under consideration whether a single death would support conviction of both DUI manslaughter and vehicular homicide. In Houser, the court made note of the fact that the structure of the DUI statute suggested that death was no more than an enhancement; however, the court found that the legislature had, indeed, intended that "DUI manslaughter" be a homicide statute, not an enhancement to DUI. In essence, although similarly constructed by the legislature, the two offenses of "DUI manslaughter" and "driving with license suspended causing death" are fundamentally distinct. To treat them identically merely based on their structure in reliance on Boutwell would place the holding in Houser in doubt, and the supreme court has repeatedly and recently reiterated its satisfaction with Houser. State v. Cooper, 634 So.2d 1074 (Fla. 1994); Goodwin v. State, 634 So.2d 157 (Fla. 1994); State v. Chapman, 625 So.2d 838 (Fla. 1993); State v. Thompson, 607 So.2d 422 (Fla. 1992). Ms. Melbourne did not improperly receive multiple convictions for one incident of driving under the influence. There were three offenses: two homicide crimes and one driving under the influence resulting in serious bodily injury.
AFFIRMED.
PETERSON and GRIFFIN, JJ., concur.
HARRIS, C.J., concurs in part; dissents in part, with opinion.
HARRIS, Chief Judge, concurring in part; dissenting in part:
I concur with the majority in its resolution of the jury selection issues. I respectfully dissent, however, from the majority's analysis of Boutwell.
Melbourne contends that she cannot be found guilty of more than one DUI offense under section 316.193, Florida Statutes (1993), arising out of a single accident because of the principle announced in Boutwell v. State, 631 So.2d 1094 (Fla. 1994). I agree *130 and would reverse but I would certify this issue to the supreme court.
In Boutwell, the supreme court considered section 322.34 (driving with a suspended license), a statute structured similarly to section 316.193 involved in our case, and held:
Under section 322.34(1), Florida Statutes (1991), a person who drives with a suspended license is guilty of a misdemeanor of the second degree. However, Boutwell was convicted under section 322.34(3), which provides:
Any person whose driver's license has been canceled, suspended or revoked ... and who operates a motor vehicle while his driver's license is canceled, suspended or revoked and who by careless or negligent operation thereof causes the death of or serious bodily injury to another human being, is guilty of a felony of the third degree .. .
It is evident that section 322.34(3) does no more than enhance the penalty for driving with a suspended license in cases where the driver through the careless or negligent operation of his vehicle causes death or serious bodily injury. If the violation of section 322.34(1) in a single driving episode can be only one offense, the violation of section 322.34(3) in a single driving episode should be considered as only one offense. We agree with Wright that regardless of the number of injured persons, there can only be one conviction under section 322.34(3) arising from a single accident.
Boutwell, 631 So.2d at 1095.
I concede that to apply Boutwell to this case, at least at first blush, appears inconsistent with Houser v. State, 474 So.2d 1193, 1196 (Fla. 1985), which held:
First, DWI manslaughter is not merely an enhancement of penalty for driving while intoxicated... . [T]he additional element of the death of a victim raises DWI manslaughter beyond mere enhancement and places it squarely within the scope of this state's regulation of homicide.
It is important to recognize, however, the context of this holding. The issue before the Houser court was whether an intoxicated driver involved in an accident in which a single passenger was killed could be convicted both of DWI manslaughter and vehicular homicide. The argument made in Houser to support dual convictions was that the death involved in DWI manslaughter merely enhanced the offense of driving under the influence and therefore, under Blockburger, was a crime distinct from vehicular homicide. The Houser court reasoned that even though the death did enhance the crime of driving under the influence, such enhancement (which made the misdemeanor now a second degree felony) also created a homicide offense separate and distinct from vehicular homicide. The court found, however, that even though they were Blockburger separate offenses, because the legislature did not intend to punish a single homicide under two separate statutes, only one conviction could stand.
The issue before us is not whether a single death can constitute two homicide convictions; it is whether multiple victims can convert an enhancement statute of a single core offense into a general manslaughter statute authorizing multiple prosecutions.
It is, of course, without doubt that manslaughter is within the scope of our regulation of homicide. Indeed, both sections 782.07 and 782.071, Florida Statutes (1993), are manslaughter statutes, either of which might well justify the prosecution for each death caused by the defendant in this case. The question before us is not whether each death is subject to prosecution, however; the issue is whether, by the manner in which it enacted section 316.193, the legislature intended that all of the deaths resulting from a single act of driving under the influence could be prosecuted under this particular statute.
In considering section 810.02, Florida Statutes (1981), another statute structured similarly to the one in our case, the supreme court held:
Committing an assault during a burglary and being armed during a burglary are two grounds upon which a charge of burglary can be enhanced in seriousness under section 810.02, Florida Statutes (1981). However, neither the allegation nor the proof of both enhancement factors can transform one instance of unlawful entry *131 from one crime into two crimes. There was no evidence of more than one such unlawful entry. The court should have merged counts four and five not only for sentencing purposes but also for purposes of rendering a single judgment of conviction.
Troedel v. State, 462 So.2d 392, 399 (Fla. 1984).
Relying on Troedel, the court in James v. State, 567 So.2d 59 (Fla. 4th DCA 1990), held that two convictions of burglary with a battery could not stand (the case does not make it clear whether there were two victims or merely two distinct batteries on the same victim) because there was but a single entry.
Battery, like manslaughter, is squarely within the scope of this state's regulation. And, without doubt, the state could have prosecuted both batteries under section 784.03. The state, however, attempted to prosecute both batteries under an enhancement statute and the court, pursuant to Troedel, refused. Because the court's consistency (predictability) is the stock in trade of those who practice law, we should minimize and justify disparate treatment of similar issues.
Consider the provision of section 316.193, the statute involved in our case:
(3) Any person [who violates section (1), Driving under the influence]
(c) Who, by reason of such operation causes:
2. Serious bodily injury to another ... is guilty of a felony of the third degree ...
3. The death of any human being is guilty of DUI manslaughter, a felony of the second degree....
Melbourne argues that since the structure of this statute is similar to that in both sections 322.34 and 810.02, it should be construed to reach a similar result. That is, each statute is so structured that if one commits the core offense (either burglary, driving while license suspended or driving under the influence), then if additional, more serious elements are proved, the defendant may be subjected to a more serious consequence than had the additional elements not occurred.
In section 322.34(3), death or great bodily injury are considered together to form only one new felony, while section 316.193(3) treats them separately and forms two new felonies. But in section 810.02, additional elements form three new felonies. It appears that the number of newly formed felonies is not significant under the Boutwell analysis which, summarized by the supreme court, is:
In the instant case it was fortuitous that four persons were injured as a result of Boutwell's negligent driving instead of only one. We find this case more analogous to James v. State, 567 So.2d 59 (Fla. 4th DCA 1990), rev. dismissed, 576 So.2d 288 (Fla. 1991), in which the court held that it was error to convict on two counts of burglary with a battery because only one entry had been proven.
Would the result of Boutwell have been different if some of the seriously injured victims had died? The court seems to say no:
It is evident that section 322.34(3) does no more than enhance the penalty for driving with a suspended license in cases where the driver through the careless or negligent operation of his vehicle causes death or serious bodily injury. [Emphasis added].
Boutwell, 631 So.2d at 1095.
Justice Grimes, in a well reasoned dissent, acknowledges the similarity of the structure of sections 322.34 and 316.193 and the analytical inconsistency between Houser, if it is construed to permit multiple convictions under 316.193, and the result in Boutwell when he states:
If multiple convictions are permitted for DUI manslaughter and DUI with serious bodily injury when multiple victims are involved, there is no reason why the same principle should not apply to driving with a suspended license and causing serious bodily injury to more than one person.
Boutwell, 631 So.2d at 1096.
The majority in Boutwell did not deny the logic of Justice Grimes' contention that the two statutes should be construed similarly; it instead rejected the concept of separate *132 crimes based on a single violation of the core offense and appears to have overruled previous decisions which permitted multiple convictions based on separate victims of a single event of driving under the influence.
In Wright v. State, 592 So.2d 1123, 1126 (Fla. 3d DCA 1991), quashed on other grounds, 600 So.2d 457 (Fla. 1992), the court held that, although multiple convictions based on the number of victims would be appropriate under section 316.193(3)(c), such would not be appropriate under section 322.34(3) because the defendant's action of driving with a suspended license was "a single continuing offense and thus a single violation of section 322.34." That is, so long as you are driving with a suspended license uninterrupted, you are committing but one violation of the statute. But is that not also true of driving under the influence? So long as you drive impaired uninterrupted, are you not "continuing" to commit a single offense?
I would reverse all but a single conviction of DUI manslaughter and would certify the question to the supreme court since, in my view, the result herein is in conflict with Troedel, James and Boutwell.
NOTES
[1] The remaining issues on appeal do not warrant discussion.
[2] State v. Neil, 457 So.2d 481 (Fla. 1984).
[3] Defense's challenge to a third juror was withdrawn during oral argument.
[4] See Cooper v. State, 621 So.2d 729, 732 n. 7 (Fla. 5th DCA 1993), approved, 634 So.2d 1074 (Fla. 1994).