679 So.2d 759 (1996)
Jeanie H. MELBOURNE, Petitioner,
v.
STATE of Florida, Respondent.
No. 86029.
Supreme Court of Florida.
September 5, 1996.
*762 Terrence E. Kehoe of the Law Offices of Terrence E. Kehoe, Orlando, for Petitioner.
Robert A. Butterworth, Attorney General, and Kellie A. Nielan, Assistant Attorney General, Daytona Beach, for Respondent.
SHAW, Justice.
We have for review Melbourne v. State, 655 So.2d 126 (Fla. 5th DCA 1995), which expressly construes a provision of the state and federal constitutions. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We approve Melbourne as explained herein.
Jeanie Melbourne was driving under the influence (DUI) on June 12, 1992, when she turned in front of an oncoming vehicle, killing two people and injuring a third. She was convicted of two counts of DUI manslaughter and one count of DUI with serious bodily injury. The district court affirmed.

I. PEREMPTORY CHALLENGE
The following discussion took place at voir dire when defense counsel objected to the State's use of a peremptory challenge to strike a black venireperson, Mr. Wells:
Mr. Mason (defense counsel): Does anyone have alcoholism in their family or any friends who are alcoholics, or anything along those lines?
. . . .
Mr. Wells: My wife. She died of alcohol.
Mr. Mason: What do you do for W.E.S.H. T.V.?
Mr. Wells: I work in programming. Whatever you see is whatever I do.
Mr. Mason: Do you work nights or do you work days?
Mr. Wells: I work days.
Mr. Mason: Would you like to serve again?
Mr. Wells: I will do what I have to do.
. . . .
Mr. Bressler (prosecutor): We'd also strike Number 19, your honor.
Mr. Mason: Mr. Dewey Wells, the black man, I would raise a Baxter Johans challenge, JOHANS. He's a black man, Number 19.
Ms. Munyon: The State has not stricken any black jurors at all. The defense has stricken juror Number 10, Tillman, as well as juror Number 13, which are black.
The State accepted both of those jurors.
Mr. Bressler: Kelvin McCall was a black juror that the defense struck.
Mr. Mason: I have nothing else to say.
The Court: Well, I don't see anything in this record to indicate that there's any that the State in exercising this challenge to a black person is in any way acting in a discriminatory fashion, or singling out Mr. Wells because of his race in its exercise of peremptory challenge.
The record should reflect that the defense has excused two peremptory challenges to excuse black males and exercised its exercise of the
Mr. Mason: I've used seven per Kim.
Melbourne claims that as a result of the above discussion she is entitled a new trial. First, she asserts that the court failed to conduct a proper inquiry into the State's motivation for striking Mr. Wells as required under State v. Johans, 613 So.2d 1319 (Fla. 1993). Second, she contends that the explanation offered by the State was insufficient under State v. Neil, 457 So.2d 481 (Fla.1984), and State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). We disagree.
*763 A seminal Florida case on this issue is Neil, wherein this Court set out a procedure for dealing with racially-motivated peremptory challenges:
[T]rial courts should apply the following test. The initial presumption is that peremptories will be exercised in a nondiscriminatory manner. A party concerned about the other side's use of peremptory challenges must make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race [this is step 1]. If a party accomplishes this, then the trial court must decide if there is a substantial likelihood that the peremptory challenges are being exercised solely on the basis of race. If the court finds no such likelihood, no inquiry may be made of the person exercising the questioned peremptories. On the other hand, if the court decides that such a likelihood has been shown to exist, the burden shifts to the complained-about party to show that the questioned challenges were not exercised solely because of the prospective jurors' race [step 2]. The reasons given in response to the court's inquiry need not be equivalent to those for a challenge for cause.... [The court must then determine whether] the party has actually been challenging prospective jurors solely on the basis of race.... [step 3].
Neil, 457 So.2d at 486-87 (footnotes omitted).
Because trial courts had difficulty applying Neil, this Court refined the procedure in subsequent cases. We simplified step 1:
Rather than wait for the law in this area to be clarified on a case-by-case basis, we find it appropriate to establish a procedure that gives clear and certain guidance to the trial courts in dealing with peremptory challenges. Accordingly, we hold that from this time forward a Neil inquiry is required when an objection is raised that a peremptory challenge is being used in a racially discriminatory manner.
Johans, 613 So.2d at 1321.
We also required that in step 2 the proponent of the strike demonstrate "a `clear and reasonably specific' racially neutral explanation of `legitimate reasons' for the [strike]," and that in step 3 the judge must decide whether the proffered reasons are "first, neutral and reasonable and, second, not a pretext." Slappy, 522 So.2d at 22.
In spite of these refinements, Florida courts have continued to have difficulty in applying Neil, particularly following Johans.[1] The State in the present proceeding has submitted for consideration the recent United States Supreme Court decision in Purkett v. Elem, ___ U.S. ___, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), wherein that Court summarized its holding in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986):
Under our Batson jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination.
Purkett, ___ U.S. at ___-___, 115 S.Ct. at 1770-71 (citations omitted).
The United States Supreme Court elaborated on step 2 further:
The second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."
Id. at ___, 115 S.Ct. at 1771 (brackets in original) (quoting Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 *764 L.Ed.2d 395 (1991)). The Court noted that in step 3 "[the] whole focus [is not] upon the reasonableness of the asserted nonracial motive... [but] rather ... the genuineness of the motive .... a finding which turn[s] primarily on an assessment of credibility." Id. at ___-___, 115 S.Ct. at 1771-72.
In light of Purkett and due to the difficulty some Florida courts have had in applying our state law, we set forth the following guidelines to assist courts in conforming with article I, section 16, Florida Constitution, and the equal protection provisions of our state and federal constitutions. These guidelines encapsulate existing law and are to be used whenever a race-based objection to a peremptory challenge is made. The goal of these guidelines is the elimination of racial discrimination in the exercise of peremptory challenges.
A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis,[2] b) show that the venireperson is a member of a distinct racial group,[3] and c) request that the court ask the striking party its reason for the strike.[4] If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.[5]
At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2).[6] If the explanation is facially race-neutral[7] and the court believes that, given all the circumstances surrounding the strike,[8] the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness.[9] Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.[10]
Voir dire proceedings are extraordinarily rich in diversity and no rigid set of rules will work in every case.[11] Accordingly, reviewing courts should keep in mind two principles when enforcing the above guidelines. First, peremptories are presumed to be exercised in a nondiscriminatory manner.[12] Second, the trial court's decision turns primarily on an assessment of credibility and will be affirmed on appeal unless *765 clearly erroneous.[13] The right to an impartial jury guaranteed by article I, section 16, is best safeguarded not by an arcane maze of reversible error traps, but by reason and common sense.
Applying these principles to the present case, we conclude that Melbourne failed to preserve this issue for review because she did not renew her objection before the jury was sworn.[14] Any error could have been corrected easily at that point without compromising the whole trial at the outset. It is entirely possible that events transpiring subsequent to the initial objection caused Melbourne to become satisfied with the jury and abandon her claim.
We address the merits of the claim for instructional purposes only. As noted above, the entire text of defense counsel's objection reads as follows: "I would raise a Baxter Johans challenge, J O H A N S. He's a black man...." Giving these words their plain meaning, defense counsel seemed to be voicing a general objection on racial grounds to the State's strike. Both the State and trial court responded that the defense, not the State, had exercised prior strikes against black jurors. Defense counsel seemed satisfied, expressing no further objection ("I have nothing else to say."). At no time did defense counsel request that the court ask the State its reason for the strike. To require an entire new trial under these circumstances would do nothing to further the principles underlying Neil but rather would erode the legitimacy of that decision. We find no error.

II. DOUBLE JEOPARDY
As noted above, Melbourne caused the death of two persons and injury of a third for which she was convicted of two counts of DUI manslaughter and one count of DUI with serious bodily injury. Melbourne claims as her second issue that these multiple convictions violate double jeopardy because the convictions arise from a single violation of the DUI statute. We disagree.
This Court has held that only one conviction can arise from a single violation of the driving with a suspended license statute even though injury results to several persons. Boutwell v. State, 631 So.2d 1094 (Fla.1994). Florida courts also have held, however, that multiple convictions can arise from a single violation of the DUI statute where injury results to several persons. See, e.g., Wright v. State, 592 So.2d 1123 (Fla. 3d DCA 1991), quashed on other grounds, 600 So.2d 457 (Fla.1992). The different constructions of these two statutes, we conclude, are not contradictory; the link between the statutory violation and resultant injury is fundamentally different.
In the case of driving with a suspended license, the link between the violation and injury is indirectthe suspended license in no way causes the driver's carelessness or negligence. To allow multiple convictions for a single violation of this statute would be illogical because the violation does not cause injury to any of the victims. In the case of DUI, on the other hand, the link is direct the driver's intoxication results in his or her inability to drive safely. The DUI driver may sustain multiple convictions because the violation causes injury to each victim. We find no error.

III. CONCLUSION
Based on the foregoing, we approve the result in Melbourne on the above issues.[15] To the extent that Slappy and its progeny require a "reasonable" rather than a "genuine" nonracial basis for a peremptory strike, we recede from those cases. While the Florida Constitution cannot guarantee that every peremptory challenge exercised in *766 Florida will be rational, it can guarantee that each will be nonracial.
It is so ordered.
KOGAN, C.J., and OVERTON, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] See, e.g., Ratliff v. State, 666 So.2d 1008, 1014 (Fla. 1st DCA 1996) ("Beginning with step two moves the trial forward more expeditiously."); Holiday v. State, 665 So.2d 1089, 1090 (Fla. 3d DCA 1995) ("[A]n objector must do something more than merely objecting....").
[2] State v. Neil, 457 So.2d 481, 486 (Fla.1984). A simple objection and allegation of racial discrimination is sufficient, e.g., "I object. The strike is racially motivated."
[3] Id.
[4] See generally State v. Johans, 613 So.2d 1319 (Fla.1993).
[5] See generally id. at 1321 ("[W]e hold that from this time forward a Neil inquiry is required when an objection is raised that a peremptory challenge is being used in a racially discriminatory manner."). Johans eliminated the requirement that the opponent of the strike make a prima facie showing of racial discrimination.
[6] The explanation will be deemed race-neutral for step 2 purposes as long as no predominant discriminatory intent is apparent on its face. See generally Purkett v. Elem, ___ U.S. ___, ___, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995).
[7] If the explanation is not facially race-neutral, the inquiry is over; the strike will be denied.
[8] Relevant circumstances may includebut are not limited tothe following: the racial make-up of the venire; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment. See generally State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988).
[9] The Florida Constitution does not require that an explanation be nonracial and reasonable, only that it be truly nonracial. Reasonableness is simply one factor that a court may consider in assessing genuineness. See generally Purkett, ___ U.S. at ___-___, 115 S.Ct. at 1771-72.
[10] See id. at ___, 115 S.Ct. at 1771.
[11] See generally Hernandez v. New York, 500 U.S. 352, 374, 111 S.Ct. 1859, 1874, 114 L.Ed.2d 395 (1991) (O'Connor, J., concurring in judgment) ("Absent intentional discrimination ... parties should be free to exercise their peremptory strikes for any reason, or no reason at all. The peremptory challenge is, `as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose.' Lewis v. United States, 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892) (internal quotation marks omitted).").
[12] Neil, 457 So.2d at 486.
[13] See, e.g., Ratliff v. State, 666 So.2d 1008 (Fla. 1st DCA 1996).
[14] See Joiner v. State, 618 So.2d 174, 176 (Fla. 1993) ("[C]ounsel's action in accepting the jury led to a reasonable assumption that he had abandoned, for whatever reason, his earlier objection.").
[15] We agree with Melbourne on her third claim, i.e., that the DUI judgment contains a scrivener's error. We order that reference to section 877.111, Florida Statutes (1991), be struck from the judgment.