703 So.2d 1180 (1997)
Kevin DEAN, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 96-1685, 95-929.
District Court of Appeal of Florida, Third District.
December 24, 1997.
Clayton Kaeiser, Miami, for appellant.
Robert A. Butterworth, Attorney General, and Douglas J. Glaid, Assistant Attorney General, for appellee.
Before LEVY, GODERICH and SORONDO, JJ.
SORONDO, Judge.
Kevin Dean, defendant, appeals his convictions and sentences in this case. For the reasons set forth below, we reverse and remand for a new trial.
During the course of voir dire examination, the trial court ascertained that potential juror Mario Pensel's wife and son had been victims of crimes. Later in the jury selection process, Pensel informed the prosecutor that he and a cousin had been crime victims as well. The only other statement made by this juror during voir dire came during the examination of another potential juror, Ms. Nieves. While questioning Nieves, defense counsel asked her whether she had previously served on a civil or criminal jury. Before she could answer the question, Mr. Pensel, inexplicably, answered, "Yes."[1]
During the actual selection of the jury, defense counsel tried to exercise a peremptory challenge to strike Mr. Pensel. The state requested an ethnic-neutral reason for the strike. Because the trial court was not certain that the juror was of Hispanic heritage, he recalled Mr. Pensel and inquired about his place of birth and heritage. Satisfied that the juror was Hispanic, and consequently a member of a distinct racial group, State v. Alen, 616 So.2d 452 (Fla.1993), the trial judge asked the defendant for an ethnicneutral *1181 reason. Defense counsel responded as follows:
Basically the reasons are two fold. First of all basically he stated that as far as his attention, I don't know it seems like he really wasn't attentive. He stated his wife and son was [sic] a victim of a crime. Himself, was a victim of a crime. And I don't think he was really responsive. I don't believe he would be a fair and impartial juror. We will have a problem with Pensel.
The trial court ruled that this was not a valid ethnic-neutral reason and disallowed the peremptory strike. Mr. Pensel ultimately sat on the jury and was selected as the foreperson. At the conclusion of the selection process defense counsel accepted the jury subject to his previously stated objection and thereby preserved the issue for appellate review. Joiner v. State, 618 So.2d 174 (Fla.1993).
In Melbourne v. State, 679 So.2d 759 (Fla.1996), the Supreme Court of Florida established the following procedure for determining the racial, ethnic, and/or gender neutrality and genuineness of a peremptory challenge:
Step 1 A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venire person is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike.
Step 2 At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation.
Step 3 If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained.
Id. at 764.[2] In this case the prosecutor, with the trial court's help, complied with the requirements of step 1. As required by step 2, the judge then properly asked defense counsel for an ethnic-neutral explanation for the exercise of the peremptory challenge. Defense counsel then offered three reasons: 1) the juror's lack of attentiveness, 2) the fact that the juror, his wife and son had been the victims of crimes, and 3) the juror's lack of responsiveness during the process of voir dire. At this point, the trial judge decided that the articulated reasons were not ethnic-neutral and discontinued the Melbourne analysis. This was error.
We begin, as we often do in our analysis of Melbourne issues, by restating the principle that peremptory challenges are presumed to be exercised in a nondiscriminatory manner. Id. at 764. The first reason articulated by defense counsel was the juror's lack of attentiveness. On its face, there is nothing about this reason that can be considered ethnic in nature. The law is clear that at the second step of the Melbourne analysis the only consideration is the facial validity of the proffered reason. Id. at 763. In Melbourne, the Supreme Court of Florida relied heavily on the United States Supreme Court decision in Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). In Elem, the prosecutor sought to exercise peremptory challenges against two African-American jurors. The defendant objected and requested an inquiry under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the federal equivalent of State v. Neil, 457 So.2d 481 (Fla.1984). When asked to give a valid race-neutral reason the prosecutor responded as follows:
I struck [juror] number twenty-two because of his long hair. He had long curly hair. He had the longest hair of anybody on the panel by far. He appeared to not be a good juror for that fact, the fact that he had long hair hanging down shoulder length, curly, unkempt hair. Also, he had a mustache and a goatee type beard. And juror number twenty-four also has a mustache and goatee type beard. Those are the only two people on the jury ... with facial hair.... And I don't like the way they looked, with the way the hair is cut, both of them. And the mustaches and the beards look suspicious to me. *1182 Elem, 514 U.S. at 766, 115 S.Ct. at 1770. The trial court in Elem allowed the strikes without explanation and was affirmed by the state court of appeal. Mr. Elem then filed a petition for habeas corpus in the United States District Court which was denied. On appeal, the Eighth Circuit Court of Appeals reversed and concluded that the prosecution was obligated to articulate some "plausible race-neutral reason for believing that those factors [would] somehow affect the person's ability to perform as a juror." 25 F.3d 679, 683 (1994). The United States Supreme Court reversed, stating:
The second step of this process does not demand an explanation that is persuasive, or even plausible. `At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless discriminatory intent is inherent to the prosecutor's explanation, the reason offered will be deemed race-neutral.'
514 U.S. at 767-68, 115 S.Ct. at 1771 (quoting Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (O'CONNOR, J., concurring in judgment)). The Court went on to say:
It is not until the third step that the persuasiveness of the justification becomes relevantthe step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.... At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge may choose to disbelieve a silly or superstitious reason at step 3 is quite different from saying that a trial judge must terminate the inquiry at step 2 when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

Id. at 768, 115 S.Ct. at 1771 (emphasis added) (citations omitted). The Court concluded that the prosecutor's reason for striking the two jurors in question were race-neutral because "the wearing of beards is not a characteristic that is peculiar to any race." Id. at 769, 115 S.Ct. at 1771. Likewise, in the present case, the inattentiveness of a potential juror and his lack of responsiveness are not characteristics that are particular to any racial or ethnic group.
The other reason, that Mr. Pensel, his wife and son had been victims of crimes, has also been held to be a valid race-neutral reason. Barnes v. State, 620 So.2d 243 (Fla. 3d DCA 1993); Williams v. State, 619 So.2d 487 (Fla. 1st DCA 1993).
The state argues that the proffered reasons were pretextual because there was no "genuine" basis in the record to justify the suggestions of inattentiveness and unresponsiveness, and, as concerns Mr. Pensel's status as a crime victim, there were other non-Hispanic potential jurors with the same characteristic that were accepted by the defendant. Had the trial court reached the third step of the Melbourne analysis and decided that defense counsel's reasons were disingenuous, we might agree. The court, however, did not analyze the reason for pretext. The record is clear that the trial judge simply determined that the reason was not ethnic-neutral and, as such, insufficient to trigger the step 3 analysis.
Reversed and remanded for a new trial.
NOTES
[1] Mr. Pensel had previously indicated that he had never served on a jury.
[2] In fairness to the trial judge, we note that this case was tried before Melbourne was decided.