738 So.2d 428 (1999)
Randal D. PINDER, Appellant,
v.
STATE of Florida, Appellee.
No. 97-1071.
District Court of Appeal of Florida, Fourth District.
July 14, 1999.
*429 Sara Blumberg of Sara Blumberg, P.A., Boynton Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
Defendant was sentenced to life imprisonment for sexual battery and kidnapping. On appeal his principal issue is that the trial judge erroneously refused to start jury selection all over with a new panel because of the state's peremptory challenge of prospective male jurors. We disagree and affirm.
The essential crime was sexual battery. During jury selection the defendant began excusing prospective female jurors. At some point the state began excusing some male jurors. After defendant had excused the sixth successive woman, the state asked the trial judge to note this fact but expressly declined a Neil inquiry.[1] Defense counsel offered to explain this phenomenon but both the trial judge and the state felt it unnecessary at that point. After several more strikes by both sides, which included three additional male jurors by the state, defendant demanded a Neil inquiry.
Defendant had excused eight women and two men while the State used eight of its nine challenges against men. Defendant pointed out that this case involved an allegation of a man committing a brutal violent crime against a woman. Defendant asked the trial judge at that point to order the state to provide reasons for striking male jurors. The state agreed but also wanted defendant to provide reasons for striking women. Defendant rebutted the state's reasons and then provided his own explanations for striking women. The trial judge ruled that the state's strikes were not improper but that the defendant's challenges were improperly based on invidious reasons. The judge denied defendant's motion to strike the jury panel. The challenges then resumed and the state struck another man and defendant struck two more women. Near the end, the state objected to a defense strike because of a prior agreement between counsel, but defendant responded that he needed to use the strike to preserve his "appellate rights." Defendant exercised his final challenge. The judge then announced the jury, but defendant failed to renew any prior objections. At that point the judge swore the jurors in and adjourned for the day. Before the remaining venire was excused, defendant again failed to renew any objection to the jury.
In Joiner v. State, 618 So.2d 174, 176 (Fla.1993), the court held that, to preserve an issue relating to jury selection for appellate review, a party must renew its objection to the jury before the jury is accepted and sworn. In this case it is true that defendant timely objected and requested a Neil inquiry. The problem is that defendant failed to renew his objection as to selection by objecting to the entire jury before it was empaneled and sworn.
We distinguish under our holding in Langon v. State, 636 So.2d 578, 578 (Fla. 4th DCA 1994). In Langon, this court held that the defendant's failure to renew his objection at the conclusion of voir dire as required by Joiner was not a bar to appeal. Rather, the record demonstrated *430 that "the record reflects that in denying the defense request for a gender bias inquiry, the trial court made it clear that it understood that the issue in question would have to be resolved by an appeal." Accordingly, defendant's silence when the jury was empaneled misled neither the state nor the court into the belief that the issue was not preserved. See also Williams v. State, 619 So.2d 487, 490 (Fla. 1st DCA 1993) (holding that issue was properly preserved by defense counsel when he indicated that jury panel was acceptable other than strikes that trial court had disallowed and by defendant's motion for mistrial before jury was sworn that challenged denial of peremptory challenges).
While defendant did indeed state that he was striking one of the proposed alternate jurors to preserve his "appellate rights," he necessarily had to renew his objections before the empaneling or have the trial judge expressly state, as in Langon, that the earlier objections and colloquy would stand as the final objection for preservation purposes. Unlike Langon there was no explicit understanding by the trial judge that this alternate juror colloquy would serve as the final objection and that the issue was now being set aside for appellate resolution.
Even assuming that the issue were preserved, we would find analytical difficulty in requiring a new trial in this unusual context. It is clear that the trial judge found that the state's strikes of male jurors was in response to the defendant's improper strikes of all women and that the purpose of the state's response was to restore balance to the selection process. As the trial court said ultimately:
"Yes I find that both parties are exercising [strikes] in gender bias. I don't know what happened to the pursuit of justice here.... [M]y decision [is] that both parties are selecting the jury based on gender more so than anything else and the defense is more guilty of this than the state." [emphasis supplied]
We understand the trial judge to have denied relief to a party for events during a trial that the party himself had initiated into the proceedings. Ordinarily, courts are reluctant to reward a party with relief when the party requesting the ruling has been responsible for the condition on which the request is based. It is axiomatic and needs no citation of authority that a party will not be heard on appeal to complain of error that the party himself induced.
AFFIRMED.
GUNTHER, J., concurs.
TAYLOR, J., specially concurring with opinion.
TAYLOR, J., concurring specially.
I agree with the majority conclusion that the jury issue was not properly preserved for appeal. I write mainly to express my concern that the majority opinion may be interpreted as applying a "he who seeks equity must do equity" principle to jury selection and as dispensing with Melbourne guidelines, which the supreme court requires us to follow whenever a race or gender-based objection to a peremptory challenge is made.
Even if an objecting party is equally guilty of improperly exercising strikes in a discriminatory manner, the trial court is nonetheless bound to follow the three-step procedure established in Melbourne once that party makes a race or sex-based objection to a peremptory challenge. For each objection, the trial judge must monitor the peremptory strike opponent's compliance with the preliminary requirements for triggering a Neil inquiry, conduct an inquiry of the strike proponent's neutral reasons for the strike, and, finally, assess the genuineness of the proffered explanation. Melbourne v. State, 679 So.2d 759 (Fla.1996). The trial court's assessment and findings regarding genuineness will, of course, be affirmed on appeal unless clearly erroneous. See King v. Byrd, 716 So.2d 831 (Fla. 4th DCA 1998). However, *431 implicit in this deferential standard is the understanding that the trial court will, in fact, exercise its discretion, and carefully examine each claim that the other side is impermissibly using its peremptory challenges. Additionally, if requested, the trial court must impose appropriate sanctions where discriminatory intent is shown.
In my view, the notion that an objecting party can "open the door" and invite discrimination in the exercise of peremptory challenges by his own misconduct is contrary to the goal of safeguarding the constitutional right to an impartial jury and eliminating discrimination in jury selection. See Melbourne at 763. In this case, the state initially sat back and allowed the defense to use six of its first eight peremptory strikes against women without objection and then responded by using eight of nine peremptories to strike men. When the defendant objected that the state's challenges were gender-based, the state justified its selections as an attempt to restore gender balance to the selection process and "combat what the defense was doing." This was an inappropriate response. If a party suspects that peremptory challenges are being used in a discriminatory manner and that he will suffer harm as a result, the proper response is to alert the court and seek reliefnot to allow continuation of the abuse and then attempt to perpetrate the same wrong. Further, when the trial court concludes, as in this case, that both sides are improperly striking jurors on the basis of gender, it must take corrective action. It must follow the Melbourne procedures in more than a mere perfunctory manner. A finding of mutual misuse of the jury selection process does not eliminate the obligation to conduct a meaningful inquiry or impose appropriate sanctions. Moreover, the right to serve on a jury is a citizen's fundamental right and a prospective juror should not be excluded because of improper conduct of the litigants.
NOTES
[1] See State v. Neil, 457 So.2d 481 (Fla.1984); and State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988).