754 So.2d 78 (2000)
Livian WHITE, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D98-3280.
District Court of Appeal of Florida, Third District.
March 8, 2000.
Rehearing Denied April 27, 2000.
Bennett H. Brummer, Public Defender, and Susan Martin, Special Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Linda S. Katz, Assistant Attorney General, for appellee.
Before COPE, LEVY and SORONDO, JJ.
SORONDO, J.
Livian White (defendant) appeals from the lower court's final judgment and sentence. We reverse.
Defendant was charged with battery on a law enforcement officer and three counts *79 of resisting an officer with violence. She was stopped for a traffic offense and had an outstanding warrant for driving with a suspended license, three officers attempted to arrest her. These three officers testified that defendant became aggressive and punched one in the nose. He responded by punching defendant. The officers struggled with defendant and eventually took her into custody.
During voir dire examination, counsel for both parties asked many questions relating to the credibility of police officers, as the defense was to be that the prosecution was a cover-up for police brutality. As concerns the issue presented here, defense counsel asked prospective juror Adderley, an African-American, the following question and received the following answer:
Q. Do you think police officers, because of the basis of their job, are more likely to stick together than other people?
A. Yes.
Defense counsel asked prospective juror Holloway, also an African-American:
Q. Mr. Holloway, do you think that an officer is going to turn in another officer that is using excessive force on someone?
A. I wouldn't think he would turn him in unless if he had actual evidence, that he was there. I wouldn't know until I heard the facts involved.
While on the same subject, defense counsel asked prospective juror Collins, a police dispatcher who is white:
Q. Ms. Collins, I understand that you work with police officers; what do you think about that?
A. I think it depends on the partner and the situation, depending on what the person thinks that they can overlook and what they know they can't overlook.
Q. What about police brutality?
A. That's touchier. One, because it's every person's interpretation. Like me going like this to her (demonstrating) the officer could bethat's one thing. If I was beating her in the head with an asp, that would be obviously brutality, and an officer would be obligated to say something, although they wouldn't necessarily.
Counsel then asked the following question of another prospective juror, which he ultimately asked of Ms Collins:
Q. Do you think that in most cases police officers turn in there [sic] fellow officers?
A. Another officer may or may not. It's more likely that they would not say something and then get dragged into it later and then have it possibly turn into a case of why didn't they stop it if they saw it happen.
Q. So you're saying that one reason an officer may not say something, is because he would be putting himself in jeopardy; is that correct?
A. (Witness nods head.)
The state moved to excuse prospective jurors Holloway and Adderley for cause, which motions were denied. The state then exercised peremptory challenges against them. Between the state's challenges to these jurors, the defense sought to strike prospective juror Collins, who, despite stating that she could be fair, was a dispatcher and worked with law enforcement.
After the strike of Adderley, the defense objected and asked for a Melbourne[1] inquiry, noting that Adderley was a black female, that Holloway was a black male, and that the entire panel was in agreement when asked whether or not it was more likely for an officer not to turn in his partner. The defense contended that the state's reason was pretextual, as Collins was similarly situated and not stricken by the state.
The court noted its concern, stating that defense counsel was correct, that most of the panel did agree, and questioned whether *80 the entire panel should be stricken if such a response was a proper basis for a challenge. The prosecutor responded that it was his duty to strike only those people who responded verbally on this issue. The court and counsel discussed whether the panel should be recalled for more questioning, but ultimately the court did not permit further questioning and instead allowed the state's peremptory challenges.
Later in voir dire, the state sought to exercise a cause challenge against prospective juror Vamper, based upon her feelings about police officers, in general, and her statements that an officer had been disrespectful to her when issuing a ticket, using racial slurs. The prosecutor stated that while Vamper had stated initially that she could be fair, there remained a reasonable doubt as to whether she could put her experience aside and judge police officers fairly. The defense objected, asserting that she was the third black juror that the state had attempted to strike, and asked for a race-neutral reason. The court expressed great concern that Vamper was the third challenge that the state had exercised against a person of African-American descent. The prosecutor again asserted that he was moving to challenge the juror for cause. The court denied the cause challenge, but allowed the state to use a peremptory. Immediately before the jury was sworn, defense counsel stated, "For the record, I'm not accepting this panel."
The jury found defendant guilty of counts one and two, as charged, and not guilty of count four. The defendant was adjudicated guilty in conformity with the verdict and sentenced to concurrent terms of 364 days in county jail.
We begin our analysis by rejecting the state's suggestion that the Melbourne issue presented above was not properly preserved for appellate review. Defense counsel's statement that he was not accepting the panel, immediately before the jury was sworn, was sufficient to place the trial court on notice that the defendant's extensive Melbourne objections were not being abandoned. See Joiner v. State, 618 So.2d 174 (Fla.1993).
As concerns the prospective jurors in question, we do not believe that the trial court erred when it allowed the state's peremptory challenge of Ms. Vamper. Although she stated that she could be fair, her prior experience with a police officer who belittled her and used the most vile of racial epithets in addressing her, constituted a valid race-neutral reason for excusing her and the trial judge's conclusion that this reason was not pretextual cannot be found to be clearly erroneous.
The state's exercise of peremptory challenges against prospective jurors Adderley and Holloway are far more troublesome. While it is true that both of these jurors expressed the general view that police officers would "stick together" in excessive force situations, prospective juror Collins, although perhaps more articulate, said no less. In her answer to the question, "What about police brutality?," Ms. Collins responded that there might be some room for disagreement as to what exactly constitutes "brutality." She indicated that in an obvious case of police brutality, such as a situation where an officer repeatedly beat a woman over the head with a nightstick, other officers present would be "obligated to say something, although they wouldn't necessarily." Thus, Ms. Collins acknowledged what the witnessing officers' responsibility would be but conceded that they might not comply with that responsibility. In subsequent questioning she further acknowledged that an officer might not say anything about the use of excessive force because it might "be putting himself in jeopardy." These answers are indistinguishable from those given by Adderley and Holloway. The only difference between these prospective jurors is that the two the state found unacceptable were black and the one it *81 found acceptable was white.[2] Of even greater concern is the trial judge's acknowledgment in the record that she remembered that most of the prospective jurors on the panel agreed that they believed that police officers were less likely to turn on their partners.[3] This being the case it is clear that the two African-American prospective jurors were being treated differently than other similarly situated jurors. In State v. Slappy, 522 So.2d 18 (Fla.1988), the Florida Supreme Court set forth several relevant and non-exclusive criteria to guide trial courts in their determination of whether a party's proffered race-neutral reason for a peremptory challenge was pretextual. One of those criteria was whether the peremptory challenge in question was based on reasons equally applicable to jurors who were not challenged. See id. at 22. This is the situation here.
The dissent concludes that the prosecutor's reasons for striking jurors Adderley and Holloway were valid race-neutral reasons. We do not dispute that the reasons were race-neutral. The fact that a juror believes that police officers accused of brutality would stick together and perhaps even cover for each other in a case such as this is certainly a valid race-neutral reason which is acceptable under the second step of the Melbourne analysis.[4] The issue in this case does not involve step 2 but rather step 3 of the analysis.[5] Although the trial judge did not articulate the specific words of the step 3 analysis, her comments make it clear that she was concerned about the genuineness of the state's reasons for striking the two African-American jurors.[6]
In response to defense counsel's objection that Ms. Collins' answer to the question at issue was the same as jurors Adderley and Holloway, the prosecutor simply responded that Ms. Collins' answer had been different and insisted that she had said that "[police officers] don't stick together." The prosecutor's recollection was in error, as demonstrated by the quotes citing Ms. Collins' responses above.[7] Throughout the lengthy discussion *82 that followed, the prosecutor at no time articulated his reason for leaving Ms. Collins on the jury as being her employment or her familiarity with police officers.
Because we are convinced that the trial court's decision to allow the state's peremptory challenges on the prospective jurors mentioned above was clearly erroneous, we reverse the defendant's conviction and sentence and remand for a new trial.
COPE, J., concurs.
LEVY, Judge (dissenting).
I do not agree with the majority that the State's proffered reasons for striking the two prospective African-American jurors, Adderley and Holloway, were pretextual. The defense strategy in this case was that the State's prosecution of the defendant was a cover-up for police brutality; therefore, the credibility of the police officer's testimony was of seminal importance. During voir dire, the prosecutor learned that prospective juror Collins, a white woman, was a police dispatcher who worked closely with the police on a day-to-day basis. In this regard, Ms. Collins stated that her daily interactions with the police made her realize that police officers were "just normal people." Moreover, Ms. Collins acknowledged that some police officers tell the truth and that others do not. I find it reasonable for the prosecutor to believe that, in light of her on-the-job and personal experiences with the police, Ms. Collins would be more objective and understanding when evaluating the police officer's testimony in this case. For these reasons, I disagree with the majority's determination that Ms. Collins was similarly situated with prospective jurors Adderley and Holloway and that the only difference between the three prospective jurors was that two were black and one was white. Accordingly, I would hold that the State gave valid race-neutral reasons for striking prospective jurors Adderley and Holloway.
NOTES
[1] Melbourne v. State, 679 So.2d 759 (Fla. 1996).
[2] The state argues that it was never expressly established in the record that Ms. Collins was white. We disagree. This conclusion is inescapable when reading the transcript of the jury selection proceeding. Her race is discernible from the arguments of the attorneys, the concerns expressed by the trial judge and the fact that Ms. Collins was initially identified by the parties in the record as "the lady sitting between the two African-American jurors."
[3] Although the judge expressed this concern, without further comment or explanation, she allowed the peremptory.
[4] Step 2 of the Melbourne test states:

At this point, the burden of production shifts to the proponent of the strike to come forward with a race neutral explanation.
Melbourne, 679 So.2d at 764.
[5] Step 3 of the Melbourne analysis states:

If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained.
Id. (footnotes omitted).
[6] The case law is clear that there are no specific words which the trial judge must utter to satisfy the step 3 considerations. Heggan v. State, 745 So.2d 1066, 1068 (Fla. 3d DCA 1999) ("Compliance with the Melbourne analysis does not require the incantation of magical words."). There are instances where the trial judge's comments, although not including the words "genuine" or "pretextual," can communicate compliance with the step 3 analysis. See Michelin North America, Inc. v. Lovett, 731 So.2d 736 (Fla. 4th DCA), review denied, 751 So.2d 51 (Fla.1999); King v. Byrd, 716 So.2d 831 (Fla. 4th DCA 1998). See also Johnson v. State, 706 So.2d 401 (Fla. 3d DCA 1998). Although the trial judge in this case did not use the words "genuine" or "pretextual," it is clear that her expressed concerns about the peremptory challenges and the lengthy discussion about the issue were driven by the step 3 requirement of Melbourne. Likewise, although she did not ultimately say that she found the proffered reasons to be "genuine," her decision to allow the state's peremptory challenges clearly indicates that she did.
[7] In Randall v. State, 718 So.2d 230 (Fla. 3d DCA 1998), and Overstreet v. State, 712 So.2d 1174 (Fla. 3d DCA 1998), this Court addressed the problems which arise when a party inaccurately advises the trial court as to what a particular juror said during voir dire examination. As in Randall and Overstreet, the prosecutor's initial response to the defendant's objection in this case also incorrectly informed the trial court of the contents of Ms. Collins' responses during voir dire examination.