PER CURIAM.
Alfred Washington appeals his conviction and sentence for lewd assault on a child under the age of sixteen in violation of section 800.04(1), Florida Statutes (1997). He contends that the evidence does not support a conviction for a lewd, lascivious, or indecent assault on a child under the age of sixteen. He further contends that the trial court erred in permitting the state to exercise a peremptory challenge against the only potential black juror because the state’s reason for striking the juror was not genuine and was a pretext. Lastly, he contends that he is entitled to a new trial because a police officer vouched for the truthfulness of the victim’s testimony. We affirm.
The victim, a fifteen-year-old student, went to speak to appellant, a teacher and athletic coach at Royal Palm Beach High School. When she entered appellant’s classroom, the lights were on and the door was open. She testified that during their conversation appellant went to the door twice, walked outside, looked outside the door, and then came back inside. The second time, after looking once more out into the hallway, he closed the door. When the victim went to get her book bag, appellant turned off the lights. After he talked with the victim for a brief time, he walked over to her and put “his arms around [the victim], like giving [her] a hug, and then he caressed his hands up and down [her] back and passed [her] butt and then he caressed his hands up and down [her] leg on [her] thigh.” The victim testified that appellant touched the “bare skin” on her arms and thighs, “about four inches” above her knee, “mov[ing][her] dress up and down.” Appellant did not speak at the time, but made “moaning noises” in “pleasure.” Appellant described the incident as a “full embrace,” admitting that they did not let go of each other until the janitor attempted to unlock the door.
The janitor testified that he thought nobody was in appellant’s classroom because the lights were off and the door was locked. He testified that he attempted to open the door to check for cleanliness, but appellant “stepped in front of the doorway and grabbed the handle,” allowing the door to be opened outwards into the hall only about two feet, “a quarter of the way.” He stated that he leaned in to check the room and was surprised to see the victim standing to the right of door. After he stepped out of the way, the victim left the room. Because the janitor found the situation “very peculiar,” he reported it to his supervisor.
When the police initially questioned appellant about the incident, he told them that he did not let the janitor in to the room because he was changing his clothes. When asked whether he was changing in front of the victim, he admitted that his statement was untrue, but told the police that he wanted to be honest and tell them what had actually happened. In his taped statement, which was published to the jury, he admitted that he should not have been in a classroom alone with a student, but explained:
And so, she came in — on Tuesday and as I was getting myself prepared to go down to my faculty meeting. She came in and she had — -was packing up and getting ready to go, what happened is, she reached out to give me a hug and then — and I hugged her back. And, of course, I did not — we did not let each-other [sic] go. I’ll tell you that. And at the point in time when the custodian was trying to come in, that — you know, who was in the room at the time, that’s the reason why I did not let him come in.
*327 Appellant also stated that at the time of the “full embrace,” the victim “attempted to Mss [him], which [he] would not Mss her hack.” ■ He further explained that when the janitor came to the door, he realized that “it looked so bad ... he didn’t want to happen what exactly happened ... [and he] just didn’t want it to be any blemish [on his record].”
First, appellant contends that the trial court erred in denying his motion for judgment of acquittal because the facts did not amount to “gross indecency”; a “wicked,” “unchaste” design; or an “unlawful indulgence in lust, eager for sexual indulgence” as described in Chesebrough v. State, 255 So.2d 675, 677 (Fla.1971). He argues that his brushing, touching, or caressing the victim outside her clothing could only support a conviction for simple battery. We disagree.
Under section 800.04(1), Florida Statutes (1997), a person is guilty of a:
[l]ewd, lascivious, or indecent assault or act upon or in the presence of a child [if he or she] [h]andles, fondles, or assaults any child under the age of 16 years in a lewd, lascivious, or indecent manner.
The words “lewd” and “lascivious” are not defined in the statute. However, according to the Supreme Court of Florida, they are “words in common use, and the definitions indicate with reasonable certainty the character of acts and conduct which the Legislature intended to prohibit and punish, so that a person of ordinary understanding may know what conduct on his part is condemned.” Chesebrough, 255 So.2d at 677. The supreme court added, “It would be, of course, difficult or impossible to detail in a statute book all the acts which would constitute lewd and lascivious behavior, but there is a large body of case law on the meaning of the words ‘lewd’ and lacscivious.’ ” See id. at 678 (citing Buchanan v. State, 111 So.2d 51 (Fla. 1st DCA 1959)).
In State v. Mitchell, 624 So.2d 859 (Fla. 5th DCA 1993), an adult male brushed an eleven-year-old girl’s “hair with his hands and then in playful, friendly manner, placed her on his lap and started to Mss her on the mouth. He then put his hand under her shorts, felt her buttocks for a short time, and asked to play in her hair again.” Id. at 859. The child testified that the defendant did not attempt “to touch her sexual organs[,] ... ask[ ] her to undress[,] or to do anything of a sexual nature.” Id. The defendant filed a motion to dismiss claiming that the facts did not offer “sufficient indicia” of a “ ‘wicked, lustful, unchaste, licentious or sensual design’ ” on his part and failed to establish a prima facie case of guilt. Id. The trial court dismissed the amended information. Id. at 860.
The Fifth District Court of Appeal reversed, holding that because “[t]he legislature has not precisely defined ‘lewd and lascivious’ behavior, ... it is up to a jury to decide, based upon the totality of the circumstances, whether or not [the defendant’s] behavior violated” section 800.04(1), Florida Statutes (1991). Id.; see also Egal v. State, 469 So.2d 196, 197 (Fla. 2d DCA 1985). The Fifth District further added that although a trial court can “make that determination when it can ‘reasonably’ be said that the acts are not lewd and lascivious as a matter of law, ... [t]he facts in this case do not fall within this category.” Mitchell, 624 So.2d at 860.
In moving for a judgment of acquittal, appellant “admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.” Lynch v. State, 293 So.2d 44, 45 (Fla.1974). Here, the facts are comparable to those considered by the court in Mitchell. We hold, as the court did in Mitchell, that the record supports the trial court’s decision to deny appellant’s motion for judgment of acquittal and to-permit the jury to decide “based upon the totality of the circumstances” whether appellant’s actions constituted a violation of section 800.04(1), *328 Florida Statutes (1997). Mitchell, 624 So.2d at 860; see also Chesebrough, 256 So.2d at 679.
Next, appellant contends that the trial court erred in allowing the state to use a peremptory challenge to strike the only potential black juror from the panel. He concedes that the state’s reason for the strike was race-neutral, but argues that it was a pretext and not genuine. He further argues that the trial court did not conduct an adequate inquiry into the state’s reasons for the strike as required under Melbourne v. State, 679 So.2d 759 (Fla.1996).
The record shows that the trial court followed the requirements of Melbourne. See id. at 764. After appellant timely objected to the state’s challenge of the juror and noted on the record that she was black, the trial court asked the state to give its reason for the strike. The state then gave what appellant concedes was a race-neutral reason: the juror was a strong “church-goer,” who attended church four to five times a week. The state reasoned that the juror might be biased in favor of an anticipated defense character witness, who was a preacher and Bible school teacher, and appellant, who was a “Bible school teacher and counselor and active in church.” The trial court found the reason was race-neutral, genuine, and not a pretext.
As noted in Melbourne, “[i]f the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained” on appeal. Id. at 764. The record supports the trial court’s finding that the reason was race-neutral, genuine, and not a pretext. In looking at all the circumstances surrounding the strike, the record shows that the state’s reason for striking the potential black juror was related to the facts of the case. The record also shows that the state did not single out the only potential black juror for special treatment, but exercised two additional peremptory challenges against two other potential jurors for similar reasons. See id. at 766 n. 8 (citing factors to consider when determining whether the reason given is genuine). The trial court’s decision to permit the state to exercise a peremptory strike against the juror was not clearly erroneous. Id. at 764-65.
Lastly, appellant contends that the trial court erred in denying his motion for new trial because the state, during its redirect examination of a police officer, bolstered the victim’s credibility and at the same time communicated to the jury that appellant’s statement to the police was untrue. The officer explained that she told the victim part of what appellant told the police “[s]o that she — she didn’t feel like she needed to protect him anymore, and that — you know, that she wasn’t the one in trouble, she didn’t do anything wrong.” First, the state correctly points out that appellant opened the door to this line of questioning on cross-examination. Next, the officer did not testify that she in fact believed the victim’s statement, but only stated how she convinced the victim to tell her what had happened. Finally, the trial court gave a curative instruction, supplied by appellant. Under these facts, the trial court did not abuse its discretion in denying appellant’s motion for mistrial. See James v. State, 741 So.2d 546 (Fla. 4th DCA1999).
Accordingly, we affirm appellant’s conviction and sentence for lewd assault on a child under the age of sixteen, pursuant to section 800.04(1), Florida Statutes (1997).
AFFIRMED.
DELL, STONE and POLEN, JJ. concur.