670 So.2d 1163 (1996)
Edgardo Luis RIVERA, Appellant,
v.
STATE of Florida, Appellee.
No. 94-3516.
District Court of Appeal of Florida, Fourth District.
April 3, 1996.
*1164 Richard L. Jorandby, Public Defender, and Susan D. Cline, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
PARIENTE, Judge.
Defendant appeals his conviction for aggravated battery on a pregnant woman. We reverse defendant's conviction because the trial court improperly prevented him from exercising a peremptory challenge to strike a female juror employed in the courthouse as a deputy clerk.
Following the questioning of prospective jurors, defendant sought to exercise his first peremptory challenge to strike juror Elizabeth Maxwell. The prosecution stated that "we would ask for a gender-neutral reason," after which the trial court requested defense counsel to state her basis for the challenge. Defense counsel explained that the juror worked as a deputy clerk in the courthouse, knew everyone connected with the case and that there is "a built-in prejudice toward the State." Defense counsel reminded the trial court that she was seeking to utilize a peremptory challenge and not seeking dismissal for cause.
Juror Maxwell worked as a deputy clerk in the jury room. The parties' familiarity with juror Maxwell and her familiarity with them was quite apparent from the beginning of jury selection. While the judge was initially going through the list of prospective jurors to be sure that he could pronounce their names correctly, he recognized juror Maxwell and stated: "Miss Maxwell, good afternoon, you'll get to see it from a different perspective today." During the court's voir dire, the judge asked the prospective jurors who either knew or were related to the defendant, the attorneys or the court personnel to raise their hands. When the judge got to juror Maxwell, the judge stated, "And Ms. Maxwell, I think you know everybody here."
Even in light of her position in the courthouse and her familiarity with the individuals involved (except presumably defendant), the trial court did not permit the defense to exercise a peremptory challenge. In denying the challenge, the trial court stated that defendant had not inquired further into whether juror Maxwell's employment status would have any effect on her ability to be fair and impartial after juror Maxwell had told the *1165 trial court that she could be fair and impartial.
The prohibition against race-based discrimination has been extended to gender, see J.E.B. v. Alabama ex rel. T.B., ___ U.S. ___, 114 S.Ct. 1419, 1430, 128 L.Ed.2d 89, 101-08 (1994); Abshire v. State, 642 So.2d 542 (Fla.1994), as well as ethnicity, State v. Alen, 616 So.2d 452 (Fla.1993). This prohibition applies equally to peremptory challenges exercised by the state or the defendant. See Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); State v. Aldret, 606 So.2d 1156 (Fla.1992). Potential jurors, as well as litigants, have an equal protection right to jury selection procedures free from stereotypical presumptions that reflect and reinforce patterns of historical discrimination. J.E.B., ___ U.S. at ___, 114 S.Ct. at 1421, 128 L.Ed.2d at 105.
In Florida this right is not based only on the Equal Protection Clause of the Fourteenth Amendment and the Florida Constitution, article I, section 2, but it is also based on the "guarantee of an impartial jury drawn from a cross section of the community contained in article I, section 16." Aldret, 606 So.2d at 1157. As explained in Abshire:
Jury service is a privilege accorded all citizens who meet certain qualifications and the right to an impartial jury is granted to every defendant who is entitled to a trial by jury. To extend or restrict this privilege based solely on the basis of gender is to foster the sex-based stereotypes that have long impeded the progress of women in our judicial system.
Abshire, 642 So.2d at 544.
The same procedural safeguards set forth in State v. Johans, 613 So.2d 1319 (Fla.1993), designed to prevent racial discrimination in jury selection, likewise apply to gender-based discrimination. See Abshire; Johans. When an objection is made that a peremptory challenge is being used in a gender-based discriminatory manner, a Neil[1] inquiry is required. Abshire; Johans.
Under Florida law, there is an initial presumption that peremptories will not be exercised in an invidiously discriminatory manner. See Neil. A peremptory strike will be deemed valid unless an objection is made that the challenge is being used in a discriminatory manner on the basis of race, gender or any other cognizable class entitled to protection under Neil and its progeny. See Johans, 613 So.2d at 1321; Abshire, 642 So.2d at 544.
Here the prosecutor did not state an objection that the peremptory challenge was being used in a gender-based discriminatory manner. Rather, he simply stated: "Your Honor, we would ask for a gender-neutral reason." The prosecution's statement did not constitute either an objection or a threshold showing which would trigger the Neil inquiry envisioned by Johans.
In Portu v. State, 651 So.2d 791 (Fla. 3d DCA), review denied, 658 So.2d 992 (Fla. 3d DCA 1995), the third district held that no Neil inquiry was triggered by the state's merely noting that the juror was of Hispanic descent. Because the state failed to supply the threshold information necessary for an objection to provoke judicial inquiry into the basis for a peremptory challenge, the third district held that the peremptory challenge should have been granted. See also Slaton v. State, 666 So.2d 598 (Fla. 3d DCA 1996); cf. Johans (trial court must make inquiry if a party objects on grounds that even a single peremptory challenge is racially motivated).
Gender as a classification comprises 100% of the population. It is thus far from remarkable that the first defense strike would be a female. In painting a total picture of jury selection in this case, it also bears noting that the first peremptory challenge from the prosecution was also a woman and that both the defense and prosecution had agreed to strike three other jurors (two women and one man) for cause. No pattern of gender-based discrimination emerges nor does there appear a rational reason to rebut the initial presumption that the peremptories were being exercised in a nondiscriminatory manner. *1166 Cf. Abshire (prosecutor manifested desire to exclude women from jury); Laidler v. State, 627 So.2d 1263 (Fla. 4th DCA 1993)(prosecutor made no secret of her desire to eliminate all women from jury).
The fact that a party has challenged a woman or a man, standing alone, should be insufficient to trigger a Neil inquiry without the prosecution or defense objecting with some basis that the peremptory challenge is being used in a discriminatory manner.[2] Otherwise, an opponent of the strike could always object and require the proponent to explain its use of a peremptory challenge because, with the exclusion of race, gender and ethnicity, all identifiable groups of the population are now protected from intentional invidious discrimination.
Even assuming that there was a sufficient predicate to trigger a Neil inquiry, the reason provided by defendant constituted a clear and reasonably specific gender-neutral reason to meet the requirements of Johans and Neil. The juror was a deputy clerk employed in the jury room at the courthouse who knew the participants and worked in the very system that would be responsible for trying this defendant.[3] Far from being a subterfuge for gender-based discrimination, defendant's concerns with having juror Maxwell on his jury were bona fide and rationally-based. As explained by our supreme court in State v. Slappy, 522 So.2d 18, 22 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), the reasons given for exercising a peremptory challenge need not be equivalent to a challenge for cause.
Defendant points out that persons who are inextricably intertwined with the judicial system are statutorily disqualifiedthe clerks of court, all judges and the members of the Clemency Board. See § 40.013(2)(a), Fla. Stat. (1995) ("Neither the Governor, nor Lieutenant Governor, nor any Cabinet officer, nor clerk of court, or judge shall be qualified to be a juror"). Defendant argues that, as a deputy clerk, juror Maxwell is called upon to perform various delegated duties of the clerk. This connection supplies an additional reason for holding that juror Maxwell's employment status supplied a gender-neutral reason for the exercise of a peremptory challenge. Cf. Gonzalez v. State, 569 So.2d 782 (Fla. 4th DCA 1990), quashed in part on other grounds, 585 So.2d 932 (Fla.1991) (involvement of a juror's close family member with the law); Betancourt v. State, 650 So.2d 1021, 1023 (Fla. 3d DCA), review denied, 659 So.2d 272 (Fla.1995) (juror who had served as foreman of another jury supplied race-neutral reason).
There was no contrary evidence that the challenge of juror Maxwell was motivated by discriminatory intent. The trial court erroneously assumed that defense counsel's failure to inquire further about whether juror Maxwell could be fair and impartial constituted evidence that the reason supplied by her was pretextual in some way. But none of the Slappy factors indicative of a pretextual strike were present. See Slappy, 522 So.2d at 22. Defendant desired to strike juror Maxwell, not because of any expressed biases or prejudices, but because she might very well have a built-in bias or prejudice in favor of the system she worked in daily. This did not disqualify her; this did not rise to the level of a challenge for cause in this case; *1167 but, it certainly was a gender-neutral reason to strike an individual.
Judge Schwartz observed in Betancourt, "[w]here there is no reason in common sense, legal intuition or the record to overcome `the presumption that the peremptories will be exercised in a non-discriminatory manner,'" the strike should be allowed. Judge Schwartz' observations in Betancourt are equally applicable to the challenge here; there is "no basis for concluding that the challenge involved the evil proscribed by the Batson-Neil rule; that is, that it was based on a `constitutionally impermissible prejudice.' " 650 So.2d at 1023 (citing Slappy, 522 So.2d at 20).
In Purkett v. Elem, ___ U.S. ___, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), the United States Supreme Court revisited the procedure by which courts should analyze a claim that a party is exercising a peremptory challenge in a racially discriminatory or gender-biased manner. In Purkett, the Supreme Court held that, under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a three-step analysis is required: (1) the opponent must make a prima facie case of invidious discrimination; (2) the burden then shifts to the proponent of the strike to come forward with a race-neutral or gender-neutral explanation; and (3) if any race-neutral or gender-neutral explanation is offered, the trial court must then decide whether the opponent of the strike has proved purposeful discrimination. ___ U.S. at ___, 115 S.Ct. at 1770; 131 L.Ed.2d at 839. The Supreme Court found that it was reversible error to require the proponent of the strike to come forward with a persuasive explanation. Instead, the Supreme Court held that "[t]he second step of the process does not demand an explanation that is persuasive, or even plausible," and stated that to hold otherwise would impermissibly shift the burden of persuasion. Id.
Although our supreme court has not revisited Johans, in light of Purkett, the case before us, like many we have seen recently, highlights the need to re-examine the threshold showing necessary to shift the burden to the proponent of the strike to demonstrate that the strike is being exercised in a non-discriminatory manner. Prior to Johans, before a Neil inquiry was required, the opponent of the peremptory challenge needed to demonstrate on the record that there was a strong likelihood that the individual was being challenged because of an invidiously discriminatory motive. See Johans, 613 So.2d at 1321. As it stands now, all that is required under Johans to shift the burden of proof to the proponent of the strike is an objection that any challenge is being exercised in an invidiously discriminatory manner; that is, on the basis of race, gender or other protected classifications.
At the present time the requirements of United States constitutional law on this subject vary in certain material respects from Florida law as to the threshold showing necessary to trigger the inquiry, the type of reason that will suffice to overcome the initial objection, and where the ultimate burden of persuasion rests. Recently, the first district has certified a question to our supreme court concerning which party bears the burden of proving or disproving the validity of the reasons offered in support of a peremptory challenge after a litigant objects to its basis. See Ratliff v. Florida, 666 So.2d 1008 (Fla. 1st DCA 1996).
Here, whether we apply the more stringent burden imposed on the proponent of a strike by Johans or apply the three-pronged analysis of Purkett, there is nothing in the record to indicate that the peremptory challenge was being used by defendant in other than a non-discriminatory, gender-neutral manner. Accordingly we are compelled to reverse the conviction.
WARNER and POLEN, JJ., concur.
NOTES
[1] See State v. Neil, 457 So.2d 481, 486 (Fla.1984), receded from in part, State v. Johans, 613 So.2d at 1321-22.
[2] We recognize that the number of strikes used to exclude minority jurors is not dispositive of whether discrimination has occurred in the process of exercising peremptory challenges. Nor is the fact that a member of the minority class in question has been seated as a juror or an alternate. See State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988); cf. Reynolds v. State, 576 So.2d 1300 (Fla.1991) (striking one African-American venire member who was sole minority available for jury service created strong likelihood that juror challenged solely because of race).
[3] In fact, after juror Maxwell was seated as a member of the jury and preliminary instructions administered, the trial court addressed the following remarks directly to her:

Miss Maxwell, since you work in the Jury Room and work in the court system, it's going to be especially important that you be sure to isolate yourself from anything that has to do with any pending criminal trial; will that be any problem for you, ma'am?