895 So.2d 1124 (2005)
Rolfson Ralph DESPIO, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D03-2326.
District Court of Appeal of Florida, Third District.
February 2, 2005.
*1125 Bennett H. Brummer, Public Defender, and Beth C. Weitzner, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Jennifer Falcone Moore, Assistant Attorney General, for appellee.
Before COPE, FLETCHER, and RAMIREZ, JJ.
RAMIREZ, J.
Appellant Rolfson Ralph Despio, a Haitian-American, appeals his conviction and sentence for armed robbery with a firearm. Because the State exercised its peremptory challenges in a discriminatory manner, we reverse.
During voir dire at trial, Rose Nadiale Barthold and Florence Aarestrup were the only two identified Creole-speaking prospective jurors on the venire. Over defense objection based upon race, the State used a peremptory strike to remove juror Barthold. The State then attempted to use another peremptory strike against juror Aarestrup. Defense counsel objected that Aarestrup was black and requested a race-neutral reason.
The prosecutor replied that juror Aarestrup "is Creole" and "speaks Creole," and thus she "may" have some sympathy for the defendant. The prosecutor stated that the alibi witnesses (the defendant's Haitian-American family) would be testifying regarding what they did on Christmas (the date of the charged offenses), thus juror Aarestrup "may" have her own beliefs as to what happens at Christmas and that "might be a problem." The prosecutor further stated that when the police tried to go into the defendant's home, the alleged "big issues" are "who speaks Creole, who doesn't speak Creole," and juror Aarestrup might understand more than some jurors whether the witnesses actually speak Creole.
The trial court ruled that these reasons were "race neutral" and allowed the State to strike juror Aarestrup. Defense counsel objected that the State had stricken the only two persons on the panel who spoke Creole and that the State's reason  that juror Aarestrup was Creole and spoke Creole  was really a racial reason. The trial court noted the objection. The defense renewed its objection before the jury was sworn in because the only two Creole-speaking people had been stricken. The jury was sworn in over these objections.
As explained in Melbourne v. State, 679 So.2d 759, 764 (Fla.1996):
A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
Id. at 764 (footnotes omitted).
The State argues on appeal that the defense only objected on the basis of race, *1126 not ethnic origin. That may have been the initial objection, but all the subsequent discussion and objections were framed around the jurors' Creole backgrounds. The State basically argues that they were wrongfully accused of racial discrimination when they were only engaged in ethnic discrimination. A fair reading of the record, as outlined above, indicates that the judge and the litigants were using "Creole" interchangeably with Haitian-American, a frequent assumption in our community, as opposed to Louisiana, or other parts of the country.
We thus conclude that, pursuant to Melbourne, the burden of production shifted "to the proponent of the strike to come forward with a race-neutral explanation (step 2)." Id. The explanation given by the State was a classic ethnically-discriminatory strike. We need not even reach step 3 in the Melbourne analysis because the State never satisfied step 2. The State struck juror Aarestrup on the assumption that she would be biased because of her ethnic background, her familiarity with the manner in which Haitians celebrated Christmas, and her presumed ability to understand more than other jurors because she spoke Creole. Except for the ability to understand Creole, the other reasons were not ethnically-neutral.
In Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), a decision which uses ethnicity and race interchangeably, the Supreme Court held that the New York state courts came to the proper conclusion that the prosecutor offered a race-neutral basis for his exercise of peremptory challenges. Id. at 372, 111 S.Ct. 1859. But essential to the decision was the fact that "the prosecutor did not rely on language ability without more, but explained that the specific responses and the demeanor of the two individuals during voir dire caused him to doubt their ability to defer to the official translation of Spanish-language testimony." Id. at 360, 111 S.Ct. 1859. In language particularly relevant to our case, the Court added:
We would face a quite different case if the prosecutor had justified his peremptory challenges with the explanation that he did not want Spanish-speaking jurors. It may well be, for certain ethnic groups and in some communities, that proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal protection analysis.
Id. at 371, 111 S.Ct. 1859. We are presented in our case with precisely that situation. In the context of the prosecutor's remarks, it is clear that language proficiency was used as a surrogate for ethnic and racial discrimination.
We therefore reverse the conviction and remand for a new trial.