899 So.2d 1169 (2005)
Cedric FRAZIER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-1710.
District Court of Appeal of Florida, Fourth District.
April 13, 2005.
*1171 Sidney Z. Fleischman of Fleischman & Fleischman, P.A., Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Linda Harrison, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Appellant, Cedric Frazier, appeals his judgment of conviction and sentence for trafficking in cocaine and possession of cannabis. We reverse because the trial court erred in allowing the state's peremptory challenge of a Jamaican juror where the reason proffered for the challenge was neither race nor ethnic neutral.
During jury selection, the state attempted to peremptorily strike Juror Anderson, a black woman who moved to Florida from Jamaica several years ago. Appellant objected, noting that Anderson was the only black person remaining on the panel. The following exchange occurred concerning the juror:
Ms. Neuner: Judge, I strike juror number fourteen, Ms. Anderson.
Mr. Fleischman: Judge, I'm going to raise Melbourne on Anderson. At this point she would be the only black female ... She would be the only black person on the jury.
The Court: Okay, State.
Ms. Neuner: Yes, Judge. Miss Anderson has testified that she prior to living in Miramar was from Jamaica. Jamaica is known to be a high area for narcotics to be transported in from Jamaica to the United States. Being that we are dealing with a trafficking case that is my challenge for her being, that she, the area of where a individual is from is a factor to go into whether or not they can sit as a juror. In being that she is from an area that is highly known for narcotics, trafficking. I would strike her on that ground.
The Court: Defense, do you have anything you wish to say about that? It is a race neutral reason and does it appear to be genuine.
Mr. Fleischman: Judge, the only, when you say I do have a response, the only response to that would be that there was no questioning into that particular area. Which certainly the State could have gone into with her, even if outside the presence of the other jurors. So you're simply making
The Court: It's a race neutral fact that she's from Jamaica. She's the only person from Jamaica and the court is familiar that Jamaica is a place where drugs many times import from. In fact we have many tourists that buy these little dolls that are stuffed full of cannabis and other goodies.

*1172 Mr. Fleischman: I want to if I could make a few other points in regard to Miss Anderson. She, however, again there was nothing on the record to indicate her knowledge or experience with any trafficking from Jamaica.
The Court: The fact that is if she had knowledge and experience it would be a challenge for cause. All that's required is it be a race neutral reason.
The court allowed the strike.
Juror Gongora, a prospective juror from Colombia, South America was selected as the next juror without objection from the state. The state then attempted to use a peremptory strike against Juror Daniel, a black woman from the U.S. Virgin Islands. Again, the state based the strike on the fact that the juror was from a country known for drug trafficking. The court, however, disallowed this strike. When jury selection ended, appellant preserved his objection to the peremptory strike of Anderson by renewing his objection before the jury was sworn. See Joiner v. State, 618 So.2d 174 (Fla.1993).
It is well-settled in Florida that peremptory challenges may not be used to exclude prospective jurors solely because of their race or ethnicity. See State v. Neil, 457 So.2d 481 (Fla.1984); State v. Alen, 616 So.2d 452 (Fla.1993). In Alen, the Florida Supreme Court extended Neil to protect cognizable ethnic groups from discriminatory use of peremptory challenges. The court held that the use of peremptory challenges against jurors based solely on their membership in an ethnic group is prohibited. After analyzing the various factors that determine whether a particular group constitutes a cognizable class entitled to Neil protection, the court recognized Hispanics as a cognizable ethnic group.
Although Neil prohibited racial discrimination in jury selection based on the defendant's right to an impartial jury under article I, section 16 of our state constitution, Alen and later Florida cases held that discriminatory peremptory challenges also violate the equal protection clauses of the state and federal constitutions. See Alen, 616 So.2d at 454 (citing Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)); see also Abshire v. State, 642 So.2d 542, 544 (Fla.1994) (holding that excluding women from jury solely because they were women violated prospective jurors' and defendant's right to equal protection).
In Hernandez, the United States Supreme Court suggested that the discriminatory use of peremptory strikes against Hispanics would violate the Equal Protection Clause. There, the Court summarized the three-step process established in Batson, 476 U.S. at 105-107, 106 S.Ct. 1712, for evaluating an objection to a peremptory strike. 500 U.S. at 352, 111 S.Ct. 1859. In the second step of the Batson process, the strike's proponent must offer a race-neutral explanation for the peremptory challenge. Id. The Supreme Court explained that "in evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law." Id. at 359, 111 S.Ct. 1859 (emphasis added). Because a trial court's ruling on the race-neutrality of an attorney's explanation is a question of law, federal appellate courts review the ruling de novo. See Stubbs v. Gomez, 189 F.3d 1099, 1105 (9th Cir.1999); United States v. McCoy, 23 F.3d 216, 217 (9th Cir.1994); United States v. Uwaezhoke, 995 F.2d 388 (3rd Cir.1993); *1173 United States v. Johnson, 941 F.2d 1102, 1108 (10th Cir.1991).
Similarly, under Melbourne v. State, 679 So.2d 759 (Fla.1996), Florida courts must follow a three-step process when peremptory strikes are challenged:
Step 1 A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met, the court must ask the proponent of the strike to explain the reason for the strike.
Step 2 At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation.
Step 3 If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained.
679 So.2d at 764.
At Step 2 of the Melbourne procedure, the burden shifts to the strike's proponent to articulate a race-neutral explanation. The explanation will be deemed race-neutral for step 2 purposes as long as "no predominant discriminatory intent is apparent on its face." Melbourne, 679 So.2d at 764 n. 6 (citing Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). However, "if the explanation is not facially race-neutral, the inquiry is over; the strike will be denied." Id. at 764 n. 7.
As mentioned above, federal courts consider the facial validity of an explanation to be a question of law and thus review the trial court's ruling on this issue de novo. We should similarly review the trial court's ruling on facial validity de novo. Then, if we determine as a matter of law that the explanation is race-neutral, we should review the step 3 genuineness assessment for clear error. See Rodriguez v. State, 753 So.2d 29, 41 (Fla.2000) (reiterating that, because the validity of a peremptory challenge turns primarily on an assessment of credibility, a trial court will be affirmed on appeal unless it is clearly erroneous).
In this case, the prosecutor explained that she struck the black juror because she was an immigrant from Jamaica, a country known for drug trafficking. Implicit in her stated reason is an assumption that Jamaicans have more exposure to the drug trade and thus are likely to harbor some bias or predisposition in drug prosecutions. The trial judge ruled that the prosecutor's explanation was race-neutral. We disagree. A neutral explanation means an explanation based on something other than the race or ethnicity of the juror. See Hernandez, 500 U.S. at 360, 111 S.Ct. 1859. As Hernandez recognizes, an explanation can serve as a surrogate for impermissible racial bias, particularly where there is a high correlation between race or ethnicity and the prosecutor's stated criterion. Id. at 372, 111 S.Ct. 1859.
Here, the prosecutor invoked the juror's place of origin as a reason to exclude her from jury service. Given the inextricable link between the juror's race, ethnicity, and country of origin, we do not view this explanation as race/ethnic-neutral.[1] The juror's Jamaican national origin *1174 is so closely tied to her race and ethnicity that to exclude her from jury service solely because of it violates the Equal Protection Clause. The guarantee of equal protection forbids the exclusion of prospective jurors on the basis of assumptions that arise solely from their racial or ethnic ancestry, which may encompass their country of origin. See Hernandez v. Texas, 347 U.S. 475, 477-78, 74 S.Ct. 667, 98 L.Ed. 866 (1954) (stating that "exclusion of otherwise eligible persons from jury service solely because of their ancestry or national origin is discrimination prohibited by the Fourteenth Amendment"). Cf. Wamget v. State, 67 S.W.3d 851 (Texas Crim.App. 2001) (holding that a prospective juror's birth in a foreign country was a race-neutral reason for a peremptory challenge).
In Alen, our supreme court recognized that national origin is an important factor in determining a person's ethnicity. 616 So.2d at 455. It can also be significant in identifying one's race. Racial identity is often defined by geographical reference. As the court noted, there are a variety of variables that divide African-Americans into subgroups. Id. Country of origin is one such variable. For Neil purposes, it does not matter whether Jamaicans are viewed as an African-American subgroup because of common racial ancestry or defined as a distinctive ethnic group due to a distinct history and culture. Under either classification, Jamaicans qualify as a cognizable class. Thus, excluding potential jurors solely because they "come from Jamaica" is constitutionally impermissible. A discriminatory intent is inherent in such an explanation, thereby rendering the explanation facially invalid.
The Third District Court of Appeal recently addressed a similar jury selection issue in Despio v. State, 895 So.2d 1124, 1124-26 (Fla. 3d DCA 2005). There, the state attempted to use a peremptory strike against a Haitian juror. In response to defense counsel's request for a race-neutral reason, the state replied that the juror "is Creole" and "speaks Creole." The state explained that the juror might have some sympathy for the defendant, who was also Haitian, and that, because the defense witnesses spoke Creole, the juror might inject his own beliefs and understanding about the alleged robbery into the trial. The trial judge accepted these reasons as "race neutral" and allowed the strike. The third district reversed, describing the state's explanation as "a classic ethnically-discriminatory strike." Id.
The court relied on the Supreme Court's decision in Hernandez v. New York, 500 U.S. at 360, 111 S.Ct. 1859 in concluding that language proficiency was used as a surrogate for ethnic and racial discrimination. In Hernandez, the Supreme Court explained that it determined there that the prosecutor had offered a race-neutral basis for exercising peremptory challenges against Hispanic jurors because "the prosecutor did not rely on language ability without more, but explained that the specific responses and the demeanor of the two individuals during voir dire caused him to doubt their ability to defer to the official translation of Spanish-language testimony." 500 U.S. at 360, 111 S.Ct. 1859. *1175 The Court implied, however, that it would have found the strikes inherently discriminatory if the prosecutor had followed a policy of striking all Spanish-speaking jurors without regard to the particular circumstances of the trial or the individual responses of the jurors. The Court observed, "[i]t may well be, for certain ethnic groups and in some communities, that proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal protection analysis." Id. at 371, 111 S.Ct. 1859.
In this case, the juror's country of origin should be viewed as a surrogate for impermissible racial or ethnic bias. A policy of striking all jurors who originate from a country inhabited by a distinct racial or ethnic group, without regard to the particular circumstances of the trial or the individual responses of the jurors, is inherently discriminatory. As the defense counsel pointed out, the prosecutor made no attempts to question Juror Anderson about her familiarity and experiences, if any, with drug trafficking in Jamaica. Rather, the prosecutor's challenge rested on stereotypical assumptions about Jamaicans. Striking all Jamaicans from criminal drug trials on the assumption they will be tolerant of drug offenses is akin to striking Haitian jurors on the assumption that they will be biased in favor of a Haitian defendant or Creole-speaking witnesses. This is precisely the type of impermissible stereotyping condemned by the Equal Protection Clause. See United States v. Bishop, 959 F.2d 820, 823 (9th Cir.1992) ("`[A] generic reason ... [or] group-based presumption ... applicable in all criminal trials' to members of a minority is not race neutral.") In Bishop, the Ninth Circuit Court of Appeals held that a prosecutor's explanation that he struck a black juror who lived in Compton, a predominantly low-income black neighborhood, because he believed that Compton's residents were likely to be anesthetized to violence was not a race-neutral explanation for the strike.
As Judge (now Justice) Pariente said in addressing the issue of gender-based peremptory challenges, "potential jurors, as well as litigants, have an equal protection right to jury selection procedures free from stereotypical presumptions that reflect and reinforce patterns of historical discrimination." Rivera v. State, 670 So.2d 1163, 1165 (Fla. 4th DCA 1996) (citing J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 129, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994)). When stereotypical presumptions are based on a juror's nationality or ancestral home and proffered as a reason for a peremptory strike, discrimination in jury selection has occurred as a matter of law.
In sum, the prosecutor failed to meet her burden of coming forward with a race/ethnic-neutral explanation for exercising a peremptory strike against Juror Anderson. Therefore, we need not reach the question of whether the prosecutor's explanation was genuine or pretextual.[2]
We find no error in the trial court's denial of appellant's motion for judgment of acquittal on the cocaine trafficking charge or in the trial court's admission of duct tape found in the defendant's wallet during his arrest.
Reversed For New Trial.
STONE and HAZOURI, JJ., concur.
NOTES
[1] "The ethnic composition of Jamaica reflects the historical legacy of African enslavement. Various historical and sociological reports (Black,1997; Morrish, 1982) suggest that most of the Africans taken to Jamaica were from the West African coast and later from Angola and the Congo. Today, the ethnic composition of Jamaica is as follows: African descent, 90.4%, East Indian, 1.3%, white, 0.2%, mixed, 7.3% and other 0.6% (World Fact Book, 1999)." Doreen Miller, An Introduction to Jamaican Culture for Rehabilitation Service Providers, Center for International Rehabilitation Research Information & Exchange (CIRRIE) Monograph Series (2002), http://cirrie. buffalo.edu/jamaica. html.
[2] We note, however, that the state's acceptance of a juror from Colombia, South America, a country widely known for drug exportation, would be relevant to our review of the trial court's finding of genuineness.