PARIENTE, J.,
concurring.
I concur in the discharge because the majority of this Court has determined that there is no reason to recede from our precedent of Melbourne v. State, 679 So.2d 759 (Fla.1996). In light of Justice Cantero’s dissent as well as the certified question presented by the Third District opinion in Whitby v. State, 933 So.2d 557, 564 (Fla. 3d DCA 2006), I write to explain why our continued adherence to Melbourne is sound.
Florida courts generally have provided parties greater protection than federal courts in preventing discriminatory jury selection practices. State v. Slappy, 522 So.2d 18, 20-21 (Fla.1988). Indeed, the United States Supreme Court has repeatedly emphasized that it is for the states to formulate appropriate procedures for implementing Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny. See Johnson v. California, 545 U.S. 162, 168, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005); Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 631, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); Powers v. Ohio, 499 U.S. 400, 416, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); Batson, 476 U.S. at 99, 106 S.Ct. 1712.
In fact, before the United States Supreme Court’s decision in Batson, this Court in State v. Neil, 457 So.2d 481, 486-87 (Fla.1984), addressed the issue of racial bias in the use of peremptory challenges. We subsequently sought to refine the Neil test in Slappy, ever mindful “that the spirit and intent of Neil was not to obscure the issue in procedural rules governing the shifting burdens of proof, but to provide broad leeway in allowing parties to make a prima facie showing that a ‘likelihood’ of discrimination exists.” Slappy, 522 So.2d *1126 at 21-22.[1]
In State v. Johans, 613 So.2d 1319 (Fla.1993), this Court again modified the Neil test due to the difficulty trial courts were having in applying the procedure that case established. In Johans, the Court prospectively held that the only requirement to trigger a mandatory Neil inquiry is a timely objection and statement that the peremptory challenge is being used in a discriminatory manner. Id. at 1322. Johans basically receded from step one as prescribed in Neil, removing the requirement that the objecting party show that there was a strong likelihood the challenge was based on the juror’s race. Id. This Court also held in Johans that “the proper remedy in all cases where the trial court errs in failing to hold a Neil inquiry is to reverse and remand for a new trial.” Id.
In Melbourne, the Court noted that the decision in Johans was intended to clarify the procedure to be followed in dealing with peremptory challenges. 679 So.2d at 763. The Court explained that the Johans rule — that a Neil inquiry is required when an objection is raised that a peremptory challenge is being used in a racially discriminatory manner — was a “refinement” of the process intended to guide trial courts. Id. at 763 (citing Johans, 613 So.2d at 1321). Recognizing that Florida courts continued to have difficulty in applying Neil, especially after Johans, the Court in Melbourne again clarified and further simplified the process to be followed, focusing on step one:
A party objecting to the other side’s use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3).
679 So.2d at 764 (footnotes omitted).
Since Melbourne, we have repeatedly reaffirmed the viability and value of the simplified procedure set forth in that decision. Moreover, in Dorsey v. State, 868 So.2d 1192 (Fla.2003), despite disagreement over steps two and three, the Court expressed no disagreement with the simplified first step. Id. at 1199-1201, 1203-05. As Justice Bell so eloquently stated in arguing that Dorsey departed from Melbourne:
In Melbourne v. State, 679 So.2d 759 (Fla.1996), a unanimous opinion authored by Justice Leander Shaw, a judicious balance was finally reached in the effort to eliminate racial discrimination, yet maintain the full and free use of peremptory challenges. The procedural steps and principles outlined in Melbourne have worked remarkably well.
Id. at 1203 (Bell, J., dissenting) (footnote omitted).
Recently, in Johnson v. California, 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005), the United States Supreme Court *1127 confronted the issue of peremptory challenges yet again. The Court addressed “whether Batson permits California to require at step one that ‘the objector must show that it is more likely than not the other party’s peremptory challenges, if unexplained, were based on impermissible group bias.’ ” Id. at 168, 125 S.Ct. 2410 (quoting People v. Johnson, 30 Cal.4th 1302, 1 Cal.Rptr.3d 1, 71 P.3d 270, 280 (2003)). The Court in Johnson stated:
We did not intend the first step to be so onerous that a defendant would have to persuade the judge — on the basis of all the facts, some of which are impossible for the defendant to know with certainty — that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirements of Batson’s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.
545 U.S. at 170, 125 S.Ct. 2410. Additionally, the Court noted that the Batson inquiry was designed to produce actual answers to suspicions that peremptory challenges are racially motivated, stating that “[t]he inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question.” Id. at 172, 125 S.Ct. 2410. Although Johnson is not directly applicable to Florida law because Florida law requires much less of the objecting party to mandate a Neil inquiry, it demonstrates the confusion that Florida law avoids by requiring race-neutral explanations more often than federal law.
Judge Rothenberg, writing for the majority in Whitby v. State, 933 So.2d 557 (Fla. 3d DCA 2006), posits at least two reasons for modifying Melbourne: (1) concerns about gamesmanship that could occur in objecting to peremptory challenges, and (2) needless reversals that occur for technical reasons.
As to the Third District’s first reason for receding from Melbourne, a concern about “gamesmanship,” I am uncertain that requiring more to be said in the first step will eliminate the perceived potential for abuse.[2] Of course, it would be a definite concern if parties objected to each juror that the other side seeks to strike peremptorily but the remedy is not to recede from Melbourne. We must rely on attorneys’ good faith obligations as officers of the court to refrain from making frivolous, dilatory objections.[3] Moreover, since the second step of Melbourne requires only a *1128 race-neutral reason, the inquiry returns in the third phase to the proponent of the strike to prove a discriminatory purpose. It is the third step that is the critical one. And the thrust of our case law is to encourage an inquiry whenever a suspect peremptory challenge is called to a trial court’s attention because the overarching value is to eliminate invidious discrimination in jury selection.
As to the second reason offered by the Third District, that of an alleged increase in unnecessary reversals because of Melbourne, the Public Defender for the Eleventh Circuit, on behalf of Whitby, makes a compelling presentation in the appendix to its brief showing that the number of cases that were reversed based on challenges to peremptory strikes has decreased significantly since Melbourne. Importantly, the Public Defender points out that most of the cases cited by the Third District in its footnote occurred because of errors in the second and third steps. An independent review of the thirty-seven decisions cited in the Whitby footnote, 933 So.2d at 564 n. 1, discloses that the vast majority of these cases (twenty-nine) required reversal due to errors in steps two and three, such as that a race-neutral reason for the strike could not be articulated or that the trial court either did not undertake a genuineness analysis or erred in its finding of genuineness.[4] However, only eight of the *1129 cases were reversed for step one errors, making it unlikely that Florida’s adherence to Melbourne’s simplified step one refinement is precipitating many unnecessary reversals.[5] .1 would further note that in Pickett v. State, 922 So.2d 987 (Fla. 3d DCA 2005), another case certified to this Court by the Third District, it would appear that the trial court was simply unaware that a pattern of discrimination was not a “condition precedent” to the trial court requiring the striking party to give a race-neutral explanation. Id. at 993. That principle has been enshrined in Florida law since at least 1988 in Slappy, and reiterated over the years.[6] Moreover, the reversals for errors in steps two and three indicate that adherence to the core requirements of Melbourne continues to be important.
Further, a review of the out-of-state decisions cited in Justice Cantero’s dissent *1130 that have adopted the Batson standard indicates that determining whether a party has satisfied the first step of a prima facie showing of discrimination before requiring the opposing party to provide a race-neutral reason has not proven simple or error free.[7] Beyond the question of the standard of review, some of the decisions conflict in their determination of what will suffice for a prima facie showing. Compare Juniper v. Commonwealth, 271 Va. 362, 626 S.E.2d 383, 412 (stating that mere exclusion of members of a particular race by using peremptory strikes does not establish a prima facie case), cert. denied, — U.S. -, 127 S.Ct. 397, 166 L.Ed.2d 282 (2006), with Highler v. State, 854 N.E.2d 823, 827 (Ind.2006) (stating that removal of the only African-American juror does raise an inference that the strike was racially motivated). Thus, even where the Batson step one prima facie showing requirement is imposed, courts are not always consistent in its application.
The United States Court of Appeals for the Third Circuit, in Holloway v. Horn, 355 F.3d 707 (3d Cir.2004), noted that problems arose because of certain state requirements that the objecting party make a complete record of the asserted grounds, such as statistical evidence, to support a finding of a prima facie showing. Id. at 729. The Third Circuit stated that such a requirement “is at odds with Bat-son’s first step because it places a burden upon the defendant to make a record of largely irrelevant information in order to raise an inference that the prosecutor excluded members of the venire on account of race.” Id. This type of problem discussed in Holloway is avoided in Florida by the application of the requirements set forth in Melbourne.
As the amici[8] in this case state, “Melbourne establishes a simple, precise, and easy-to-administer procedure for challenging a litigant’s suspected use of a peremptory challenge to discriminate based on race or other impermissible factors.... The ‘simplified inquiry’ adopted by this Court recognizes that little is required to request, and evaluate, a neutral explanation, but too much is lost if discrimination is permitted to remain undetected.” Brief of Amici Curiae at 2.
There is no perfect solution to the problem of discrimination in jury selection. The values that this Court has sought to protect since Neil have been not only the rights of the defendants or other litigants but those of the excluded group member, and in the end the promotion of the fair and even-handed administration of justice. For all these reasons, I conclude, as does the majority in this case by discharging jurisdiction, that there is no compelling reason presented to recede from Melbourne.
ANSTEAD and QUINCE, JJ., concur.

. The Court in Melbourne receded from Sloppy to the extent that it required a "reasonable” rather than a "genuine” race-neutral basis for a peremptory strike, although reasonableness is one factor that may be considered in assessing genuineness. See Melbourne, 679 So.2d at 764 & n. 9.

. In my years both as a trial attorney and an appellate judge I have not witnessed an explosion of abuses based on Melbourne and I note that the brief of the Florida Prosecuting Attorneys Association does not cite to a single case or authority for the assertion that there has been a "proliferation of totally frivolous Melbourne objections.”

. I have expressed this concern in the past:
The fact that a party has challenged a woman or a man, standing alone, should be insufficient to trigger a Neil inquiry without the prosecution or defense objecting with some basis that the peremptory challenge is being used in a discriminatory manner. Otherwise, an opponent of the strike could always object and require the proponent to explain its use of a peremptory challenge because, with the exclusion of race, gender and ethnicity, all identifiable groups of the population are now protected from intentional invidious discrimination.
Rivera v. State, 670 So.2d 1163, 1166 (Fla. 4th DCA 1996) (footnote omitted). However, that opinion predated Melbourne, and despite the concerns that Justice Cantero now expresses, which are similar to those I had expressed over a decade ago in Rivera, I believe that Melbourne has provided the best solution to this complex problem of attempting to eliminate invidious discrimination in jury selection.

. Frazier v. State, 899 So.2d 1169, 1175 (Fla. 4th DCA 2005) (reversing trial judge’s ruling that prosecutor's explanation was race/ethnic-neutral); Despio v. State, 895 So.2d 1124, 1126 (Fla. 3d DCA 2005) (same); Wallace v. State, 889 So.2d 928, 930-31 (Fla. 4th DCA 2004) (reversing because prosecutor's "race neutral explanation ... was not a reasonable explanation in light of the facts” and rejecting State’s argument "that prosecutor's use of a peremptory challenge was not pretextual”); Thomas v. State, 885 So.2d 968 (Fla. 4th DCA 2004) (reversing because State’s race-neutral reason was not genuine); Russell v. State, 879 So.2d 1261, 1262 (Fla. 3d DCA 2004) (reversing because the trial court incorrectly rejected the defense's facially-neutral reason and failed to assess the “genuineness of the proffered reason”); Douglas v. State, 841 So.2d 697, 698 (Fla. 3d DCA 2003) (reversing in part because defense’s reasons for the challenge were race-neutral and legitimate); Daniels v. State, 837 So.2d 1008, 1009 (Fla. 3d DCA 2002) (reversing because the trial court erred in finding the defense's reason, namely, the age of the juror, not facially race-neutral); Fleming v. State, 825 So.2d 1027, 1029 (Fla. 1st DCA 2002) (reversing because the trial court erred in failing to determine the "genuineness of the challenges”); Shuler v. State, 816 So.2d 257, 259 (Fla. 2d DCA 2002) (reversing because trial court erred "in accepting as genuine the State’s reasons for striking [the juror]”); Rojas v. State, 790 So.2d 1219, 1221 (Fla. 3d DCA 2001) (reversing because defense’s reason for the strike was gender-neutral); Jones v. State, 787 So.2d 154, 157 (Fla. 4th DCA 2001) (reversing because trial court erred in ruling that defense’s reasons for the strike were not facially gender-neutral and failing to engage in genuineness inquiry); Lewis v. State, 778 So.2d 445, 447 (Fla. 3d DCA 2001) (reversing because the defense's reasons for the strike were "a legitimate use of a peremptory challenge”); Allstate Ins. Co. v. Thornton, 781 So.2d 416, 419 (Fla. 4th DCA 2001) (reversing because trial court erred in evaluating the juror's credibility as opposed to the genuineness of the reason for the strike); Baber v. State, 776 So.2d 309, 310 (Fla. 4th DCA 2000) (concluding that appellate counsel rendered ineffective assistance by failing to raise on appeal that the State’s reasons for striking a juror were, at worst — not facially race-neutral, or at best — a total failure to even provide a race-neutral explanation); Hamdeh v. State, 762 So.2d 1030, 1032 (Fla. 3d DCA 2000) (reversing because the trial court erred in finding the reasons for the strike pretextual); White v. State, 754 So.2d 78, 82 (Fla. 3d DCA 2000) (same); Anderson v. State, 750 So.2d 741, 744 (Fla. 3d DCA 2000) (reversing because trial court erred in finding defense’s reason for the strike not facially race or gender-neutral and failing to analyze the genuineness of the reason); English v. State, 740 So.2d 589, 589 (Fla. 3d DCA 1999) (reversing because defense counsel’s reason was race-neutral and not pretextual); Foster v. State, 732 So.2d 22, 23 (Fla. 4th DCA 1999) (reversing because the trial court erred in "finding that the reason for the strike was genuine”); *1129 Michetin N. Am., Inc. v. Lovett, 731 So.2d 736, 742-43 (Fla. 4th DCA 1999) (reversing because the trial court erred- in finding the reason for the strike pretextual); Henry v. State, 724 So.2d 657, 658 (Fla. 2d DCA 1999) (reversing because the State failed to offer a race-neutral reason and there was no support in the record supporting a race-neutral reason); Georges v. State, 723 So.2d 399, 400 (Fla. 4th DCA 1999) (reversing because "nothing in the record supports the prosecutor’s stated reasons for excusing the juror”); Greene v. State, 718 So.2d 334, 335 (Fla. 3d DCA 1998) (reversing because defense counsel’s reasons for the strike were facially ethnic-neutral and the trial court erred in failing to conduct a genuineness analysis); Randall v. State, 718 So.2d 230, 232-33 (Fla. 3d DCA 1998) (reversing because the trial court "clearly erred in finding that the state’s proffered reason for striking [the] juror ... was genuine or non-pretextual”); Overstreet v. State, 712 So.2d 1174, 1175 (Fla. 3d DCA 1998) (same); Dean v. State, 703 So.2d 1180, 1182 (Fla. 3d DCA 1997) (reversing because the trial court erred in finding that the defense’s reasons for the strike were not ethnic-neutral and failed to conduct a genuineness inquiry); Daniel v. State, 697 So.2d 959, 961 (Fla. 2d DCA 1997) (reversing because the trial court failed to conduct a genuineness inquiry); Hernandez v. State, 686 So.2d 735, 736 (Fla. 2d DCA 1997) (reversing because the trial court erred in failing to find the defense’s reason facially race-neutral and genuine); Morris v. State, 680 So.2d 1096, 1098 (Fla. 3d DCA 1996) (same).

. Pickett v. State, 922 So.2d 987, 992 (Fla. 3d DCA 2005) (reversing because trial court failed to conduct a Neil inquiry and require the striking party to offer a race-neutral reason for the strike); Stephens v. State, 884 So.2d 1071, 1072 (Fla. 5th DCA 2004) (same); Alsopp v. State, 855 So.2d 695, 698 (Fla. 3d DCA 2003) (same); Murray v. Haley, 833 So.2d 877, 880 (Fla. 1st DCA 2003) (reversing because trial court failed to conduct a Neil inquiry and require the striking party to offer a gender-neutral reason for the strike); Kiwanis Club of Little Havana, Inc. v. de Kalafe, 723 So.2d 838, 841-42 (Fla. 3d DCA 1998) (finding that trial court failed to conduct a Neil inquiry and require that the striking party offer a race-neutral reason for the strike); Vasquez v. State, 711 So.2d 1305, 1306 (Fla. 2d DCA 1998) (same); Archie v. State, 710 So.2d 234, 234 (Fla. 3d DCA 1998) (finding that the State, as party opposing strike, failed to show challenged person is member of a distinct racial group); Murphy v. State, 708 So.2d 612, 614 (Fla. 1st DCA 1998) (trial court erred in failing to perform Neil inquiry).

. The Court in Abshire v. State, 642 So.2d 542, 544-45 (Fla. 1994), reiterated that:
The fact that several women were seated as jurors is of no moment, for as we have previously said "number alone is not dis-positive, nor even the fact that a member of the minority in question has been seated as a juror or alternate.” State v. Slappy, 522 So.2d 18, 21 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988); see also Johans, 613 So.2d at 1321 ("A [gender-neutral] justification for a peremptory challenge cannot be inferred merely from circumstances such as the composition of the venire or the jurors ultimately seated.”).
See also Bowden v. State, 588 So.2d 225, 228 (Fla.1991) (“It is clear that a pattern of striking black venire members need not be demonstrated before a trial court’s duty to conduct an inquiry into the State’s reasons for the excusal of a minority member is triggered.”).

. There is not agreement among the cited cases as to the standard of review to be applied to a trial court's determination of whether a prima facie showing has been made. Most of the decisions that discuss a standard of review apply a de novo standard. Several of the decisions utilize an abuse of discretion standard, and at least five decisions apply a clear error or clearly erroneous standard of review. At least one of the decisions, People v. Rivera, 221 Ill.2d 481, 304 Ill.Dec. 315, 852 N.E.2d 771, 784 (2006), applies an "against the manifest weight of the evidence” standard to determining if a prima facie showing has been made.

. The amici include such organizations as the Florida Association for Women Lawyers, the Cuban American Bar Association, the National Association for the Advancement of Colored People (NAACP), the American Civil Liberties Union (ACLU), and the Florida Association of Criminal Defense Lawyers (FACDL).