DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JEFFREY M. HASTINGS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2023-0379

[May 29, 2024]

Appeal from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; April Bristow, Judge; L.T. Case No. 50-2022-MM-008583-AXXX-SB.

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Kimberly T. Acuña, Senior Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Jeffrey M. Hastings ("Defendant") timely appeals his conviction and sentence after a jury found him guilty of resisting an officer without violence. Defendant raises three issues on appeal, one of which pertains to the trial court's denial of Defendant's motion to suppress and a challenge, raised for the first time on appeal, to the size of the jury. We affirm on these two issues without discussion.

We reverse and remand on Defendant's third issue, related to jury selection, because the trial court conducted a deficient *Melbourne*[1] inquiry and reversibly erred when it overruled Defendant's peremptory strike to prospective juror "K.L." Accordingly, we reverse and remand for the trial court to hold a new trial, subject to our ruling that the trial court properly denied Defendant's motion to suppress.

**Background**

---

[1] *Melbourne v. State*, 679 So. 2d 759, 764 (Fla. 1996).

Defendant was charged with driving with a suspended license (a charge for which the trial court ultimately entered a judgment of acquittal) and resisting an officer without violence. Defendant requested a jury trial. During voir dire, the State's counsel inquired if any venirepersons watched "crime shows," such as *CSI: Crime Scene Investigation* or *Law & Order*. Prospective Juror K.L. confirmed that he watched *CSI*, which at times portrayed courtroom scenes and evidence admissions.

Later, defense counsel asked all venirepersons about their perspectives on police including if police are generally trustworthy. K.L. responded, "I think yes" and "[the police] are doing whatever they have to do and [inaudible; juror not using microphone], so yes." Many other venirepersons offered similar responses including, but not limited to, "I think the vast majority are doing a good service," "I feel they are trustworthy," and "[p]retty much the same view as everybody. Trustworthy, yes. And of course there are a few bad people in every area." Defense counsel successfully exercised cause challenges on several venirepersons who expressed generally favorable views of the police.

Defense counsel sought to exercise Defendant's first peremptory strike against K.L. The State's counsel asked for a race-neutral reason. The trial court then requested the State to identify the protected class to which K.L. belongs. The State's counsel responded that K.L. is Indian American.

At this point, the trial court announced it would conduct a *Melbourne* inquiry and asked defense counsel for a race-neutral reason for peremptorily striking K.L. Defense counsel responded, "[K.L.] stated that he believes police are generally trustworthy and he also likes to watch *CSI*. We believe [K.L.] might, without having raised to the level of a cause challenge, might preference police testimony over others." The trial court responded:

> Okay. That's not a race neutral reason, and even if it was I don't think that's genuine at this juncture. It's very speculative. [K.L.] didn't give any indication that he wouldn't be fair and impartial. The fact that he watched *CSI* doesn't make you -- I am going to overrule then -- overrule the use of that peremptory challenge based on the reason proffered.

As voir dire continued, defense counsel accepted jurors, but reminded the trial court that acceptance was "subject to our peremptory that was denied, retaining that challenge." After the trial court announced the main panel, which included K.L., defense counsel stated they were maintaining the challenge to the trial court's denial of Defendant's peremptory strike

2

against K.L. When defense counsel reaffirmed they were preserving the issue for the record, the trial court responded:

> No, that's fine. And for the record, the proper[2] reason was that [K.L.] said he generally trusts police but there are some bad apples, and he watches *CSI.* And the Court found that that was not a race neutral, or if it was, even it wasn't a genuine reason for exercising a strike, given the facts and circumstances and the make-up of the panel, for the record.

Following Defendant's conviction, defense counsel moved for a new trial based on the trial court's denial of the peremptory challenge to K.L. The trial court then expanded on its rationale for denying the peremptory strike, stating:

> The race-neutral reason I was proffered is that [K.L.] stated generally speaking he trusted the police, but he recognized that there were a few, you know, bad apples. And also that he watched *CSI.* To the extent I wasn't clear, the trusting the police, sure, that's a race-neutral reason. That [K.L.] watched *CSI* in and of itself is not a reason at all. Had [defense counsel] elaborated and were -- this isn't a forensic case. There is nothing forensic here. It could have been, but it was not elaborated. Just the fact that someone watches *CSI* in and of itself is not a reason. But then I shifted to the genuineness, and that's for the Court to determine based on the totality of the circumstances, the whole panel, everything I saw. And that particular answer that [K.L.] gave that you described as the race-neutral reason, almost every single person on that panel gave. That yes, generally, we trust the police but -- but there may be a few bad apples. I can count at least fifteen people who gave that same exact answer. So unless you were striking each and every single person who gave that answer, based on the totality of the circumstances and what the Court saw, I don't find that that was a genuine exercise of that. So that is why the challenge was overruled, the exercise of the peremptory challenge, and so I am going to deny the new trial.

This appeal follows.

## Analysis

### *Three-Step Framework*

---

[2] The court reporter likely should have transcribed the word "proffered" rather than "proper."

When a party challenges the opponent's exercise of a peremptory strike, the trial court must follow the three-step procedure set forth by the Florida Supreme Court in *Melbourne v. State*, 679 So. 2d 759 (Fla. 1996):

> **Step 1** A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venire person is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met, the court must ask the proponent of the strike to explain the reason for the strike.

> **Step 2** At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation.

> **Step 3** If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained.

*Spencer v. State*, 162 So. 3d 224, 226–27 (Fla. 4th DCA 2015) (quoting *Frazier v. State*, 899 So. 2d 1169, 1173 (Fla. 4th DCA 2005)).

"When an objection is made, an on-the-record analysis must be applied to every challenge, without exception." *Jones v. State*, 229 So. 3d 834, 837 (Fla. 4th DCA 2017) (Klingensmith, J., concurring specially).

Here, we find no error in the manner that the trial court conducted step 1 of the *Melbourne* framework. Therefore, our analysis focuses on steps 2 and 3. In so doing, we stress that even when the burden of production shifts to the strike proponent during step 2, the burden of persuasion "never leaves the opponent of the strike to prove purposeful racial discrimination." *See Landis v. State*, 143 So. 3d 974, 977 (Fla. 4th DCA 2014) (quoting *Melbourne*, 679 So. 2d at 764). The strike opponent has a "heavy burden" because "[t]he exercise of a peremptory challenge is presumed to be nondiscriminatory." *See Hamdeh v. State*, 762 So. 2d 1030, 1032 (Fla. 3d DCA 2000).

***Step 2***

We review the facial validity of the proponent's race-neutral explanation de novo. *See Frazier*, 899 So. 2d at 1173. An explanation that is "based on something other than the race or ethnicity of the juror" and has no apparent predominant discriminatory intent on its face will satisfy step 2. *See id.*

Here, defense counsel expressed as its reasons, "[K.L.] stated that he believes police are generally trustworthy and he also likes to watch *CSI*. We believe [K.L.] might, without having raised to the level of a cause challenge, might preference police testimony over others." Neither K.L.'s views on police nor his interest in *CSI* bears any relation to K.L.'s protected status as an Indian/South Asian American. *See id.*

In fact, courts have found that a potential juror's views on police and interest in *CSI* are both race-neutral reasons for excusing that potential juror. *See, e.g., Scott v. State*, 920 So. 2d 698, 700 (Fla. 3d DCA 2006) ("The defense stated a race-neutral reason for excusing the juror. That is, the juror's voir dire responses indicate that the juror may tend to assume that police officers testify truthfully."); *Heggan v. State*, 745 So. 2d 1066, 1069 (Fla. 3d DCA 1999) (discussing that juror's answer that he would believe a police officer less than others is a valid race-neutral reason); *see also U.S. v. Farhane*, 634 F.3d 127, 157 (2d Cir. 2011) ("The prosecution offered two race-neutral reasons for excusing [a] prospective juror . . . [one of which being that] his frequent television viewing of the three 'CSI' television shows might make him reluctant to convict in the absence of scientific evidence.").

Thus, the trial court erred at step 2 when it initially found defense counsel's explanations about K.L.'s views on police and viewership of *CSI* were not race-neutral. *See Scott*, 920 So. 2d at 700; *Farhane*, 634 F.3d at 157.

***Step 3***

Once the strike proponent proffers a race-neutral reason, the trial court must proceed to a genuineness determination under step 3. *See Landis*, 143 So. 3d at 978. "[W]e should review the step 3 genuineness assessment for clear error." *Frazier,* 899 So. 2d at 1173. "[T]he proper procedure requires the trial court to make an inquiry of the *opponent* of the strike. At that point, the *opponent* bears the burden of persuasion, to demonstrate why the reason was not genuine." *Landis,* 143 So. 3d at 978 (emphasis added). "The trial court should also request that the *opponent* advise how,

5

given all the circumstances, the explanation is a pretext for discrimination." *Id.* (emphasis added).

Here, the trial court made no inquiry of the State as the strike opponent and the party with the heavy burden of persuasion. *See id.*; *Hamdeh*, 762 So. 2d at 1032. Instead, the trial court expressed, "[e]ven if it was [race-neutral] I don't think that's genuine at this juncture. It's very speculative." This statement essentially relieved the State of its burden to prove purposeful racial/ethnicity discrimination related to Defendant's peremptory strike of K.L. *See State v. Johnson*, 295 So. 3d 710, 715 (Fla. 2020).

We also note that the trial court's rationale in denying Defendant's strike of K.L. was in part due to its belief that "[K.L.] didn't give any indication that he wouldn't be fair and impartial." But the trial court's reasoning that a juror can be impartial should not serve as its basis for justifying the denial of a peremptory strike. *See Julmice v. State*, 14 So. 3d 1199, 1204 (Fla. 3d DCA 2009) ("Based on the incorrect premise that there was no race-neutral reason, the trial court also found pretext. However, the reason was race-neutral and the denial of the peremptory strike cannot be justified simply because the trial judge felt the juror could be fair.").

"[A] trial court's determination that a strike is pretextual will be reversed by the appellate court if there is no record support for the trial court's finding." *Brannon v. State*, 320 So. 3d 898, 902 (Fla. 3d DCA 2021). When determining if a proffered race-neutral reason is genuine, the trial court "may consider all relevant circumstances surrounding the strike." *See Landis*, 143 So. 3d at 978 (quoting *Murray v. State*, 3 So. 3d 1108, 1120 (Fla. 2009)). "Relevant circumstances may include—but are not limited to—the following: the racial make-up of the venire; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment." *Id.* at 978–79 (quoting *Murray*, 3 So. 3d at 1120). However, the trial court is not required to deliver a "perfect script" or "incant magic words" to comply with the required step 3 analysis. *See Wimberly v. State*, 118 So. 3d 816, 821 (Fla. 4th DCA 2012).

Here, we have no information as to the racial or ethnic identity of other members of the jury venire, including individuals who voiced views of the police similar to K.L.'s. Thus, as in *Henfield El v. State*, 308 So. 3d 202, 204 (Fla. 4th DCA 2020), "[o]ur appellate review is hampered by a collective failure at the trial level to make a sufficient record. We are unable to conclusively identify the racial make-up of the venire, prior strikes exercised against the racial group of the challenged juror, or whether the

reason proffered for the strike . . . was equally applicable to unchallenged jurors." *See also Brannon*, 320 So. 3d at 903 ("[T]here is no record evidence that [the defense counsel] tried to exercise strikes against any other Hispanic venirepersons. This, coupled with the absence of *any evidence* regarding the racial make-up of the venire, makes it impossible for us to find the necessary support in the record to uphold the trial court's genuineness finding.").

Here, the State neither suggested, let alone established, that defense counsel was habitually or even disproportionately striking other Indian Americans/South Asian Americans. In fact, defense counsel used Defendant's first peremptory strike on K.L. Much of the trial court's explanation surrounding the denial was not articulated until it was faced with Defendant's post-verdict motion for new trial.

Thus, we cannot find the record supports the trial court's holding that the State established Defendant's use of a peremptory strike against K.L. was not genuine *and* was a pretext for purposeful discrimination. *See Melbourne*, 679 So. 2d at 764 ("The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination." (footnotes omitted)); *Jones v. State*, 787 So. 2d 154, 156 (Fla. 4th DCA 2001) (reversing and remanding because trial court expressed, "[I] don't think it's a genuine strike" after defendant offered two facially neutral reasons, but there was nothing in the transcript to show that the trial court considered factors to determine genuineness (alteration in original)).

## Conclusion

Because the trial court reversibly erred under step 2 when it found defense counsel's explanations were not race-neutral, and under step 3 when it implicitly concluded the State had met its burden of "prov[ing] purposeful racial discrimination," we reverse and remand for new trial, subject to our affirmed ruling on Defendant's motion to suppress.

*Affirmed in part; Reversed and Remanded for New Trial.*

KLINGENSMITH, C.J., and CIKLIN, J., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**